JUNE 1823.

Wright
vs
Freeman

JOHNSON, J. dissented.

DECREE REVERSED, &c.

---

## COURT OF APPEALS, (E. S.) JUNE TERM, 1823.

### WRIGHT vs. FREEMAN.

APPEAL from *Kent* county court. The plaintiff below, (now appellee,) brought an action on the case against the

Where a right of way was granted by the county court under the

June 1823.

Wright
vs
Freeman.

act of 1785, ch 49, the common law interposed and guarded the enjoyment of this privilege, in the same manner and to the same extent that it was wont to protect a right of way acquired in any of the three modes known to the common law; and an action on the case will lie for obstructing such right of way.

The penalty inflicted by the act of 1785, ch 49, cannot be recovered by the party having a right of w..y. The disturbance of the way for which the penalty is inflicted is an offence against the state

An interest in a private way was known to the common law, and a new legislative mode of acquiring such right is not the creation of a new right, but only an additional means by which the right may be acquired

More than 20 years adverse possession and exclusive use of the lands over which a party claims a right of way, cannot be a bar to an action by him for obstructing such right of way

Whether or not such adversary possession would have been a sufficient ground on which the court might instruct the jury to presume a release from the parties interested in the road, to the defendant? Quere

A right of private way, whether acquired under the principles of the common law or statutory provisions, can be extinguished by a release executed by the parties interested in the right of way, to the owner of the soil

An adversary user of a private way for 20 years,

defendant below, (now appellant,) for obstructing a right of way, &c. The declaration stated, "that whereas the plaintiff, before and at the time of the committing of the grievance by the defendant as hereinafter mentioned, was, and from thence hitherto hath been, and still is, lawfully possessed of a certain farm and plantation, with the appurtenances thereto belonging, situate, lying and being, in the county aforesaid, and by reason thereof the plaintiff, during all the time aforesaid, ought to have had, and still of right ought to have, a certain way from and out of the said farm and plantation unto, into, through and over, a certain close in the said county; and from and out of the same unto and into a public road or highway in the county aforesaid, and so back again from the said public road or highway unto, into, through and over, the said close, and from and out of the same unto and into the said farm and plantation of the plaintiff, to go, return, pass and repass, with his servants, horses, carts, wagons and carriages, to places of public worship, to mills, market-towns, public ferries, and court-houses, every year, and at all times of the year, at his and their free will and pleasure; yet the defendant, well knowing the premises, but wrongfully and unjustly contriving and intending to injure the plaintiff in this behalf, and to deprive him of the use and benefit of his said way, whilst the plaintiff was so possessed of his said farm and plantation, with the appurtenances aforesaid, to wit, on, &c. and on divers other days and times between that day and the day of issuing forth the original writ in this cause, at Kent county aforesaid, placed and erected, and caused and procured to be placed and erected, divers large quantities of boards, planks, wood and earth, in and across the said way, and put and placed, and caused and procured to be put and placed, divers other large quantities of wood, timber and earth, in the said way, and kept and continued the said boards, planks, wood and earth, so placed and erected in and across the said way as aforesaid, and also the said other wood, timber and earth, in the same way as aforesaid, for a large space of time, to wit, &c. hitherto and thereby, during all the time aforesaid. the said way was and still is greatly obstructed and stopped up, and the plaintiff, by means thereof, could not, during all the time aforesaid, or any part thereof, nor can he now, have or enjoy his said way as he of right ought to have done, and otherwise might

and would have done; and hath been, and still is, by means of the premises, deprived of the use, benefit and advantage thereof, to wit, at the county aforesaid; wherefore the plaintiff saith he is injured, and hath damage to the value of five thousand dollars current money, and therefore he brings suit, &c." The defendant pleaded not guilty, and issue was joined.

1. At the trial, the plaintiff, to prove his right of way, laid in the declaration, offered in evidence a copy of a record of a judgment of the late general court, on an appeal from *Kent* county court between *George Wilson, James Woodland* and *Isaac Freeman*, appellants, and *Edward Wright*, appellee, on the petition of *Wilson*, and others, to the said court, stating, that for a considerable series of years past they had freely and uninterruptedly, out, from, and into their farms, a road for their conveniency to mill and market, which said road *Edward Wright*, the holder of the lands next adjoining to the post road, claimed a right of stoppage. They prayed that a road might be laid out, &c. The county court, after having caused a road to be laid out by the surveyor, and the testimony of witnesses to be taken and returned, adjudged that the road should run in a particular direction, and awarded damages on account of the said road to *Wright*, &c. From which decision *Wright* appealed to the general court, where the judgment was affirmed, with additional damages to *Wright*, at April term 1792. To the reading of which record the defendant objected; but the court, [*Purnell* and *Worrell*, A. J.] overruled the objection, and permitted the same to be read to the jury. The defendant excepted.

2. The plaintiff then proved the payment of the damages adjudged in the county and general courts to the defendant, by the petitioners in the record mentioned. He also proved that he is one of the grand-children of *Isaac Freeman*, one of the petitioners mentioned in the said record, and resided at the time this action was brought on the plantation on which said *Freeman*, his grandfather, lived at the time the said judgment was rendered. He then proved, that in 1790 he was on the land of the defendant, and saw *S. Wickes*, late surveyor of *Kent* county, run the lines and measure the distance of a road over the land of the defendant, as far as his bank, but not to the main road, and that the said road was never opened or used, nor the

JUNE 1828.

Wright
vs
Freeman

is a sufficient ground for the jury to presume a grant of such way; and if so, it must follow that the non user of the right for 25 years authorises the presumption of its release. An action on the case may be maintained for obstructions made on the road by the defendant, after the title of the road became vested, although the plaintiff had not removed the obstructions which existed at the time he acquired his interest. An agreement by parol cannot operate to extinguish an old right of way, or to create a new one—it simply amounts to a license, and as such may be revoked by either party

JUNE 1823.

Wright
vs
Freeman.

fences across the said way ever removed to the present time; but that the petitioners, and those claiming under them, had always, until the year 1816, used a road which was open and used in 1790, and still is open and used, by the defendant's house, and through another part of his farm. The defendant then proved, that the *locus in quo*, or land over which the plaintiff now claims a right of way under the said judgment of the general court, has been, in the enclosed possession of the defendant from the year 1790 to the present time, and that the defendant has used and cultivated the same from the year 1790 to the present time; and that the plaintiff, or those under whom he claims, have never used or exercised any right of way over the same. The plaintiff then proved by a witness, that in a conversation with the defendant about January twelve months, the defendant had said to the witness, that the petitioners, or those under whom the plaintiff now claims, had agreed in the year 1792, to take the road by the defendant's house in lieu of the road granted by the judgment of the general court. The plaintiff then proved by a witness, that in a conversation in 1816 with the defendant, he said that the witness might ride the road by the defendant's house, but that if the plaintiff ever rode over that road, he would sue him. Also by another witness, that in 1805, when he was riding the road by the defendant's house, he forbid him to ride the said road; and upon cross examination the witness stated that the defendant and himself had had a difference or disagreement before that time, and that the witness did not tell the defendant where he was going when the defendant forbid him to ride the said road. The defendant then prayed the court to instruct the jury, that if they should believe the defendant held the *locus in quo*, or land over which the plaintiff now claims a right of way, in his the defendant's possession, and has exercised an exclusive right over the same for more than twenty years before the institution of this suit, they must find a verdict for the defendant. Which instruction the court refused to give, but did instruct the jury, that more than twenty years adverse possession and exclusive use of the land by the defendant, over which the plaintiff claims a right of way, could not be a bar to this action. The defendant excepted.

3. The defendant then prayed the court to instruct the jury, that if they should believe the road granted by the

judgment of the general court has not been used by the parties, nor those who claim under them, for more than twenty-five years before the institution of this action, but that the said parties to the said judgment, or those claiming under them, have used another way through the land of the defendant, by the defendant's house, instead of the road granted by the general court, that the jury may presume a release to the defendant of the road granted by the said judgment. But the court refused to give the said instruction. The defendant excepted.

4. The plaintiff then proved by a witness, that on the 22d of November 1792, he was at the defendant's house, in company with the defendant and the petitioners; when the petitioners paid the defendant the damages adjudged to him by the county and general courts; that at that time the petitioners talked of opening the road, and the defendant said if they would lay it down, and the distances would reach the main road, he would open the road for them; that in 1793 a road was open from the division fence between the defendant and *Isaac Freeman*, (one of the petitioners,) for about one third of the distance across the defendant's land, which then turned and run by the defendant's house; the first part of which road was on the ground where *S. Wickes* actually run the road for the petitioners in the year 1790; which said first part of the road remained open until the year 1795, when the witness left the neighbourhood. The plaintiff then proved by *S. S.* another witness, that the plaintiff and himself, two or three years since, rode over the land of the defendant, and pulled down his fences, where the witness afterwards saw *J. S.* show *J. W.* the present surveyor, as the ground over which *S. Wickes*, late surveyor, run the road for the petitioners in the year 1790, which fences, after that time, were put up, and the ground over which the witness and the plaintiff rode, was cultivated by the defendant, and that the defendant's stack yard is now on a part of the same ground. The defendant then proved by the surveyor of *Kent* county, that in February 1818, he was making locations for the present plaintiff at his request, and in his presence, in an action then depending between the present defendant and plaintiff, when he, the witness, was shown the ground over which the plaintiff and *S. S.* rode and pulled down the fences of the defendant, which ground

was also shown to him as the ground over which *S. Wickes* run the road for the petitioners in the year 1790; that at the same time the plaintiff said the ground over which he and *S. S.* rode was the road he had a right to ride, because it was the original location of the road made in 1790, but that the certificate of *S. Wickes* in the year 1790, was different; and that he the witness, at the request of the plaintiff, did run the lines of the ground over which the plaintiff and *S. S.* rode, and also the lines of the road agreeably to what the plaintiff said was the road as described in the surveyor's certificate mentioned or contained in the record of the judgment of the general court, and found them variant about two degrees or more, as far as the said lines run through the lands of the defendant. And the said witness also proved, that no part of the road leading from the main road by the defendant's house to the lands of the plaintiff, in the year 1818, was near the ground shown to him as the ground over which the plaintiff and *S. S.* rode, or the ground over which he run the lines by the direction of the plaintiff as the lines of the road according to the surveyor's certificate in the record of the judgment of the general court. The said witness also proved, that the fences which the plaintiff and *S. S.* pulled down, were afterwards put up, and the ground ploughed, over which the plaintiff and *S. S.* rode; and also the ground over which he run the lines of the road, according to the surveyor's certificate as aforesaid. The defendant then prayed the court to instruct the jury, that if they should believe the road, granted to the petitioners by the judgment of the general court, was never made by the petitioners, or those claiming under them, by removing the fences and other obstructions from across the said road, that the plaintiff cannot support this action. Which instruction the court refused to give, but did instruct the jury, that the plaintiff could support the present action, though the petitioners, or those claiming under them, had never opened the road granted to them, by removing the fences, or other obstructions, from the same, and had never used the same as a road. The defendant excepted.

5. The defendant then proved by a witness, that in 1807, in a conversation with *Isaac Freeman*, (the father of the plaintiff, and son of *Isaac Freeman*, one of the petitioners named in the before mentioned record,) held in the

court-house, about a presentment against *W. Woodland* for an assault and battery committed on the defendant in this cause, the said *Freeman* said, that *Woodland*, (who was a brother of *James Woodland* one of the petitioners,) ought not to have been presented, because he had a right to ride the road by the defendant's house; that the said *Freeman* also said, the petitioners had had much trouble about the road granted to them by the judgment of the general court; and had agreed, at the instance of the defendant in this cause, to take the road by the defendant's house in lieu of the road granted to them by the judgment of the general court. The defendant also proved by another witness, that in a conversation held at the house of the witness, between him and *James Woodland*, (one of the petitioners,) the said *Woodland* said he had furnished three pair of gate posts to be put on the road leading by the defendant's house, which were put on the said road. The witness also proved, that the road leading from the main road by the defendant's house to the lands of the plaintiff, runs as it did upwards of twenty years ago. The defendant also proved, by another witness, that the road now leading by the defendant's house to the lands of the plaintiff, has been in use for upwards of twenty years, and that the witness has not during that time known any other road to be used through the lands of the defendant to the lands of the plaintiff. The defendant then prayed the court to instruct the jury, that if they believe it was agreed by and between the defendant in this cause, and the petitioners named in the record of the judgment of the general court; that the defendant should have the exclusive use and possession of the land over which the road granted to the said petitioners by the said judgment ran, and that the petitioners instead or in lieu of the said road should have and use another road through the lands of the defendant by his house; that the plaintiff cannot support this action, unless he can prove a legal revocation of the said agreement. Which instruction the court gave. The defendant then proved, by another witness, that there are now living six or seven heirs of each of the petitioners, *Wilson, Woodland* and *Freeman*. He then prayed the court to instruct the jury, that the plaintiff of himself could not revoke the agreement made between the defendant, and the petitioners named in the record of the general court. Which instruc-

JUNE 1823.

Wright
vs
Freeman

tion the court, [*Worrell*, A. J.] refused to give, but instructed the jury, that either the plaintiff, so far as he is interested, or the defendant, could revoke the said agreement, if they believed it was by parol only. The defendant excepted. Verdict and judgment for the plaintiff, and the defendant appealed to this court.

The cause was argued at June term 1821, before BUCHANAN, JOHNSON, MARTIN, and DORSEY, J. by

*Tilghman* and *Eccleston*, for the appellant, and *Carmichael* and *Chambers*, for the appellee.

DORSEY, J. delivered the opinion of the court. This case comes before the court on bills of exceptions taken to the opinions of the county court, pronounced in the trial of an action on the case brought in *Kent* county court by *Freeman*, the appellee, against *Wright*, the appellant, for obstructing a private right of way, which the plaintiff claimed over the lands of the defendant. The plaintiff, to establish his right of way over the lands of the defendant, offered in evidence the record of the proceedings of *Kent* county court, and afterwards affirmed in the general court, duly authenticated, by which it appears, that upon the petition of *Woodland*, *Freeman* and *Wilson*, the court granted to them, pursuant to the provisions of the act of assembly, entitled, "An act to declare and ascertain the right of citizens of this state to private roads or ways," passed in the year 1785, ch. 49, a right of way over the lands of the defendant. The defendant objected to this record being read in evidence to the jury, but the court permitted it to be read, and the defendant excepted. In support of this exception, it has been urged by the appellant's counsel, that as the act provides that it shall not be lawful for any person to stop up or change, or in any manner obstruct such private road or way, under the penalty of five pounds current money for every such offence, an action on the case cannot be maintained for the alleged disturbance, but that the penalty inflicted by the act must be sought to be recovered, and that therefore a grant of a private road by the county court was inadmissible evidence under the pleadings in this cause. At common law, a private right of way over the lands of another, might be claimed by prescription, grant or necessity, and the dis-

turbance of this easement or servitude could only be re-dressed in damages by an action on the case. The party claiming this incorporeal hereditament could not bring an action of trespass *vi et armis*, for any interruption or dis-turbance of it, because he had no estate or interest in the soil, but only the right of passing over it. Now the pro-position is most true, that wherever the law gives a right, it also gives a remedy for the violation of such right; and it would seem, that the moment the petitioners, or those who represent them, acquired the right of way over the lands of the defendant, emanating from the judgment of *Kent* county court, the common law interposed, and guard-ed the enjoyment of this privilege, in the same manner, and to the same extent, that it was wont to protect a right of way acquired in any of the three modes known to the common law. The penalty inflicted by the statute could not be recovered by the parties having a right of way, as the act does not enable them to sue for it. It is not given as a compensation to the parties aggrieved. The distur-bance of the way, for which the penalty is inflicted, is em-phatically styled *an offence.* An offence against whom? Against the state in its aggregate capacity. But even sup-posing that the parties injured would be entitled to sue for the penalty, still the common law remedy would attach on every interruption or disturbance of the right of way. An interest in a private way was known to the common law, and a new legislative mode of acquiring such right is not the creation of a new right, but only an additional means by which the same right may be acquired. In this view of the case, then, the penalty given by the statute can on-ly be considered as a cumulative remedy.

In the *second* bill of exceptions, the defendant's counsel prayed the opinion of the court, and their direction to the jury, that if they should believe that the defendant held the *locus in quo*, or the land over which the plaintiff now claims a right of way, in his the defendant's possession, and has exercised an exclusive right to the same for more than twenty years before the institution of this suit, they must find a verdict for the defendant; which instruction the court refused to give, but did instruct the jury, that more than twenty years adverse possession, and exclusive use of the lands over which the plaintiff claims a right of way, could not be a bar to this action. To which the defen-

dant excepted. This court thinks that there is no error in this opinion. The adversary possession of the land by *Wright*, over which the road was laid out, has been relied on by the defendant's counsel as a complete bar to the plaintiff's rights of recovery. It is presumed that by this adversary possession is meant the occupation of the land exclusive of and in opposition to the enjoyment of the way by those who had acquired the right of using it. Can such a possession be set up as a positive bar to an action brought to recover damages for the disturbance of the right of way? There is no statute declaring that such a possession shall amount to a bar. The case does not, unquestionably, fall within the provision of the statute of *James I*, which declares, that no person that has any right or title of entry shall enter but within twenty years next after his right or title shall accrue. This statute applies to lands only, and not to incorporeal hereditaments. The statute of limitation operates as a positive bar in those cases, where it applies, but in all other cases, if the length of time is relied on, it must be submitted to the jury as the foundation of presumption. Thus in *England* there is no statute of limitation that bars an action on a bond, but there is a time when the jury may presume the debt to have been discharged, as where no part of the interest has been paid within twenty years next after the same was demandable. See *Cowper*, 102,214. Whether the adversary possession, relied on in this case, would have been a sufficient ground on which the counsel for the defendant might have prayed the court to instruct the jury to presume a release, from the parties interested in the road, to the defendant, it would be improper to decide, as that question is not before us. The court are therefore of opinion, that the judgment must be affirmed on this exception.

We are of opinion, that the court ought to have instructed the jury, as required by the defendant's counsel in the prayer stated in the *third* bill of exceptions. That a right of private way, whether acquired under the principles of the common law, or the statutory provisions of the state, can be extinguished by a release executed by the parties interested in the right of way to the owner of the soil, has not been denied. The question, therefore, is this, can such a release in any case be presumed to have been executed, and if it can, ought not the court to have directed the jury in this case to presume such release? That an adversary

user of a private way for twenty years is a sufficient ground for the jury to presume a grant of such way is fully established by the case of *Campbell vs. Wilson*, 3 *East*, 294. So the enjoyment of lights for twenty years, with the acquiescence of the owner of the fee of the adjoining ground, is such a decisive presumption of a right by grant, or otherwise, unless contradicted or explained, that the jury ought to believe it. The doctrine of presumption in those cases, is founded on the principle of quieting rights which have been peaceably and uninterruptedly enjoyed for a length of time; and therefore, the law in its anxiety to protect such rights, presumes that they rightfully commenced in contract. In the case of *The Mayor of Kingston upon Hull vs. Horner, Cowper*, 102, the court directed the jury to presume a grant from the crown, not that the court really thought that a grant had been made, because it was not probable that a grant should have existed without its being on record, but the fact is presumed for the purpose and from the principle of quieting the possession. If therefore the adversary user of a right of a way over the lands of another for twenty years, shall be a sufficient foundation to presume that the right originated in grant, it must follow, upon every principle, that the non user of the right may be extinguished, by presuming a release of it for the purpose of quieting the possession. And the presumption of a release in this case is strongly fortified by the circumstance, that the parties, to whom the right of way in question was originally granted, and those claiming under them, had used another and distinct route over the land of the defendant. We are therefore of opinion, that the court below erred in refusing the prayer, and that they would have been warranted in instructing the jury, if they had been required so to do, that they might and ought to presume a release.

The *fourth* bill of exceptions presents this question, Can an action on the case be sustained for obstructions made on the road by the defendant after the time at which the title of the petitioners for the road became vested by the judgment of the general court, and the payment of damages, although they had not removed the obstructions which existed at the time they acquired their interest? We are of opinion that the defendant subjected himself to an action by multiplying the obstructions, as he thereby not

JUNE 1823.

only increased the difficulty of travelling over the road, but necessarily enhanced the expense of opening it. The defendant, by his own act, had no right to impose this additional burthen on the plaintiff. We therefore think that the court below were correct in their opinion expressed in this bill of exceptions.

The opinion expressed by the court below, on the prayer stated in the *fifth* bill of exceptions is, that if the jury believed that the agreement was by parol only, that either the plaintiff, so far as he was interested, or the defendant, might revoke it. By the common law, a private right of way must be created by prescription, (which presupposes a grant,) or by grant, or it must arise by operation of law, and in such case is generally termed a way of necessity; and in all those cases it can only be extinguished by a release, or by the union of the land and the right to the easement, in the same person. So a private way, created by the act of 1785, can only be extinguished in the same way. An agreement, therefore, by parol, in the case now under review, could pass no legal right on either side. It did not operate to extinguish the old right of way, or to create a new one, it simply amounted to a license on either side, and as such it might be revoked by either party. The opinion of the court below was therefore correct.

The court reverse the judgment on the *third* bill of exceptions. The opinions in the other bills of exceptions are concurred in. *Procedendo* awarded.

JUDGMENT REVERSED, &c.