# The Mayor, Aldermen, and Citizens of Philadelphia *versus* Riddle.

It is the duty of the counsel of a plaintiff in error who has excepted to deeds and evidence below, and who wishes to have the rulings of the court upon them reviewed, to present the deeds and evidence in his paper-book, in an appendix; and if not presented in some way, the court will dismiss his exceptions without further notice, and assume that the points excepted to have been correctly ruled below.

An old unrecorded, but technical and duly acknowledged deed from husband and wife to a third party as trustee, which deed was laid aside among the husband's or wife's papers, and never handed over nor known to the trustee, and which (the land conveyed by it having been afterwards sold by the husband and wife for the husband's use and benefit), could not operate as a conveyance, was held to be evidence of an intention on the part of the husband to settle his wife's land on her, and worthy of regard as showing a consideration for subsequent conveyances that were made for her benefit.

"Abandonment" may take place with regard to an inchoate right, but is scarcely predicable of a perfect title: and hence payment of taxes in his own name, for even thirty years, by a sheriff's vendee of a void title, who had made an entry on the land twenty-four years ago, and once or more every year since, and had run lines; and who had had a tenant on for nineteen, but not for twenty-one years; does not prove an *abandonment,* there being an absent owner of the lands, by patent. The constructive possession follows the legal title.

ERROR to the Common Pleas of *Erie county.*

Ejectment. The case in the Court below involved an immense amount of every kind of evidence; some of it brought up from a remote date; and very numerous questions as to the effect of deeds through which the plaintiff, in whom the title had been vested to bring suit, as trustee of parties interested under the last will of Mrs. Susan Wallace, claimed. But though bills of exception were taken to much of this evidence, the Court here refused to pass upon it, because the paper-book of the plaintiff in error did not set forth nor state the deeds or evidence in such a way as

to enable this Court to judge what they really were. Though the case therefore involved below a great deal of other matter which the plaintiff in error meant to bring up, the only matters which this Court would consider, arose from this case.

John B. Wallace, Esq., in April, 1805, married Miss Susan Binney, who was possessed of a considerable patrimony, mostly real estate, and on June 9, 1806, joined with her in a short but regular deed of bargain of sale, to Horace Binney, Esq., which was not acknowledged till June 9, 1807, when it was formally acknowledged by both parties; by this deed Mr. and Mrs. Wallace conveyed all and singular the lands, tenements, and real estate belonging to the said Susan, wheresoever the same may be, together with the appurtenances, to have and to hold the same with the appurtenances to the said Horace, his heirs and assigns, to the use of the said Horace his heirs and assigns for ever. In trust, nevertheless, that the said Horace, his heirs and assigns, shall hold the same upon such trusts and for such uses and purposes as the said Susan, by any instrument of writing in the nature of her last will and testament, being all written with her own handwriting, signed with her name, and sealed with her seal; shall appoint and declare. This deed was never delivered, nor shown to Mr. Binney, nor put upon record, but was put away among other papers of either Mr. or Mrs. Wallace, and its existence for some time apparently forgotten. Mr. Binney never saw it till after Mr. Wallace's death in 1837, when it was shown to him by a son of Mrs. Wallace, who had found it among the papers of his mother's trust. Between the date of this deed and December, 1814, Mr. Wallace and his wife had sold about $53,000 of her estate for his purposes; and in that month, Mr. Wallace gave to Mr. Binney a bond for $50,000, which Mr. Binney accepted, to hold in trust for the use of his sister, Mrs. Wallace; the consideration of this bond being Mrs. Wallace's patrimony which had passed into her husband's hands, and which Mr. Wallace recited that it had always been his intention to settle. In part payment of this bond, the lands in question were conveyed in 1824, by a short deed, never recorded, to the then trustee, an assignee of the obligee; but no endorsement was made on the bond. Soon after this transfer, August 14, 1819, Stephen Girard obtained a judgment, at Philadelphia, against Mr. Wallace, as endorser of certain notes, and on November 25, 1824, levied on these lands, with actual notice that they were the property of Mrs. Wallace, whose agent forbade the sale; Mr. Girard bought them 19th March, 1825, under the sale made on his own levy. He had no lien at the date of Mr. Wallace's conveyance, his *testatum fi. fa.* having been docketed in Erie, October 20, 1824. Immediately after Girard's purchase he had the assessments charged to his own name, and paid taxes on the property for twenty-nine or thirty years, up to the bringing of this

[Mayor, &c., of Philadelphia v. Riddle.]

suit. Immediately after his purchase, also, he appointed an agent, who, in May, 1830, went upon the land with surveyors. These got assistance from other parties to run lines and subdivide the property into smaller lots. The land was unseated. Girard's party remained upon the land three or four days, and divided the property into lots. After this the agent advertised for proposals to make a road, received proposals, and sent them to Girard. Girard died about that time, making the plaintiffs in error his devisees. The agent then corresponded with these last, who sent him power to make leases, which he did make in 1835, '36, '41, '42, '46, '49, and '50, but none prior to July 7, 1835. Except in one year, the agent went upon the lands once a year, and sometimes oftener, every year; and was at great expenses of every kind in taking care of the property. This suit was brought in 1853. On the trial below, the counsel for the defendant in error asked the Court to charge in effect that the deed of 1807 constituted an equitable agreement and obligation on the part of Mr. Wallace to settle his wife's separate real estate upon her, and that, having had himself the benefit of this property, it was a good consideration for the subsequent bond; which instruction the Court in substance gave. The plaintiff in error asked the Court to charge in effect that the possession of Mr. Girard was such an adverse possession as created a title under the statute of limitations; and also that the omission for twenty-eight years to bring suit, and the acquiescence in Girard's possession all that time, in his payment of taxes, in his care of the property, and the other facts shown, constituted an abandonment by Mrs. Wallace, or her devisees, of her title; which instruction the Court did not give, but gave instructions in substance the reverse.

*Walker*, for plaintiff in error, cited Strimpfler v. Roberts, 6 *Harris* 283; Foster v. McDivit, 9 *Watts* 346; Foust v. Ross, 1 *W. & Ser.* 504; Read v. Goodyear, 17 *Ser. & R.* 350; Kelsey v. Murray, 9 *Watts* 111; Kite v. Brown, 5 *Barr* 294; Hole v. Rittenhouse, 7 *Id.* 305; Naglee v. Albright, 4 *Wh.* 300; McCall v. Neely.

*Thompson* and *Marshall*, for defendant in error, cited Naglee v. Albright, 4 *Wh.* 300; Bunting v. Young, 5 *W. & Ser.* 188; Roland v. Long, 1 *Harris* 464; Girard's Heirs v. The City of Philadelphia, 2 *Wallace Jr.* 301.

The opinion of the Court was delivered by
WOODWARD, J.—The counsel of the plaintiffs in error could not have expected us to pass on the effect of the deeds mentioned in the bills of exception, for he has not furnished us with a syllable of those documents. The rules of Court require the evidence,

when it is to be reviewed, to be printed in an appendix, which is wholly omitted from the plaintiffs' paper-book. The first five assignments of error, therefore, are to be dismissed without further notice, and it is to be assumed that the title papers were adequate transfers of the title of John B. Wallace, Esq., to the defendant in error. The two remaining errors are assigned in total disregard of Rules VI. and VII. (6 *Harris* 578), but as, by searching and sifting, we can find out the instructions complained of, we proceed to consider them.

The deed, Wallace and wife to Binney, dated 9th June, 1807, and the bond, Wallace to Binney, dated 2d December, 1824, both which were given in evidence, without objection, and for a view of which we are indebted to the paper-book of the defendant in error, were unimportant as affecting the transfer of the lands in controversy, for the deed never was delivered, and the bond does not refer to these lands; but were worthy of some regard, as showing an intention on the part of Mr. Wallace to settle his wife's lands on her, and as a consideration for the subsequent conveyances that were made for her benefit. These were the only purposes which that evidence could legitimately accomplish, and the answers of the Court in respect to it, were substantially to this effect. The answers of the Court to the plaintiffs 4th and 5th points, and to the 1st, 4th, 5th, 6th, and 7th points of the defendants (now plaintiffs in error), may be considered together.

The city of Philadelphia claim under Stephen Girard, whose title originated in a judgment recovered by him against John B. Wallace, in the Supreme Court at Philadelphia, on the 14th day of August, 1819, and a *testatum fi. fa.* docketed in Erie county, the 20th of October, 1824, and levied on these lands 25th November, 1824. Under a *testatum venditioni*, the sheriff sold the lands to Stephen Girard on the 19th of March, 1825. Before the lien of Girard's judgment attached, Mr. Wallace, by several deeds, had conveyed away all his estate and interest in the lands in trust for his wife, as we infer from what is said of the deeds in the bills of exception, but none of the trustees, and no one for them, or for the *cestui que trust*, had paid taxes for, or taken actual possession of the lands, and hence it was insisted on the part of the city, that Mr. Wallace's title was derelict and abandoned.

Mr. Girard, from the time he purchased, paid the taxes, had an agent to supervise the lands, surveyed them in 1830, and, after his death in 1831, the city of Philadelphia continued the same agent, who made leases to tenants, the first on the 7th of July, 1835, and paid taxes as before. More than twenty-one years having elapsed after Girard's purchase, before suit was brought, it was maintained that these acts of ownership constituted a title under the statute of limitations. The Court ruled both points against the city. And we think, rightly.

[Mayor, &c., of Philadelphia *v.* Riddle.]

The constructive possession of land, not actually occupied, follows the legal title: that is, in contemplation of law, every man is in possession of the land he owns, until *ousted* by an intruder, and abandonment of title is not to be presumed from non-entry, nor from neglect to pay taxes. The law does not limit a man's title to the *possessio pedis*. He may own lands he never saw, and an entry once in every cycle of one-and-twenty years is not necessary to preserve his title, because, in the eye of the law, he is in possession all the time. Inchoate rights may be abandoned, but abandonment is scarcely predicable of perfect titles. And though it is an owner's duty to pay taxes, what if he do not? The law, instead of presuming his title abandoned, seizes and sells it to the highest bidder. If another pays the taxes, it will help to define the extent of any actual possession he may have taken, but an owner's mere neglect to pay taxes, when they are paid by another, will never work a forfeiture of title. Nor does payment of taxes under a colourable title, constitute possession for the purposes of the statute of limitations. There must be an actual entry, and a continued and visible possession, either by cultivation or residence, to give title under the statute, and where this is, payment of taxes proves much every way. It helps to define the extent of the possession, gives it notoriety, is a renewed protest from year to year against the outstanding title, and, by contributing to the public necessities, increases the merit of the disseisor. But alone, or in connexion with such acts as were proved in this case, before the possession of 1835, payment of taxes is neither ground for presuming abandonment of the real title, nor for barring it under the statute. The plaintiffs in error took actual possession in 1835, and from that time the statute ran in their favour, but it had not completed its course when it was arrested by the present action. These principles have been many times asserted and applied in Pennsylvania, and they justify the answers of the Court to the points propounded. The only remaining point is the defendant's 10th, which relates to the effect of a deed which is not exhibited, and, therefore, we cannot pronounce in respect to it. So far as the case is disclosed to us, we see no error, and accordingly affirm the judgment.

Judgment affirmed.(*a*)

(*a*) The Reporter is indebted to J. W. Wallace, Esq., of Philadelphia, for the report of this case.