Sullivan, }
May 3, 1910. }

GLYNN, *Trustee,* v. MAXFIELD.

One who proves possession in and conveyance from a prior occupant of land establishes his title as against a claimant under a subsequent invalid tax collector's deed.

Where a deed in trust discloses the grantor's intent to part with all his interest in land, and provides that the property shall be managed for certain beneficiaries and conveyed at the direction of a majority of them or their legal representatives, the conveyance is of the fee, and upon the death of an original beneficiary his share passes to his legal representatives.

In such case, the failure of the trustee to convey the premises during his life-time or that of the beneficiaries named in the deed does not terminate the trust nor extinguish the title of those who can prove their succession as the legal representatives of the original *cestuis que trustent.*

A mere failure to assert title to land does not amount to an abandonment of it, unless there is some adverse claim.

An owner of land which has been sold for non-payment of taxes is not charge_able with laches because he failed to occupy the premises, unless the pur-chaser was thereby induced to believe that his title would not be con-tested.

In a proceeding to set aside a tax collector's deed, the assessment by the selectmen is open to attack upon the ground that it was not made against the party designated by statute.

An assessment of a non-resident tax in the name of one who was neither the owner nor the original proprietor of the land, and who was not in pos-session or actual occupation of it, is illegal; and a sale and conveyance of the premises for non-payment of such tax transfers no title to the pur-chaser.

WRIT OF ENTRY, to recover land in Goshen. Trial by the court and verdict for the plaintiff. Transferred from the May term, 1909, of the superior court by *Plummer,* J., upon exceptions which are stated in the opinion.

*Jesse M. Barton* and *Edwin G. Eastman* (*Mr. Eastman* orally), for the plaintiff.

*George R. Brown* and *Henry S. Richardson* (*Mr. Brown* orally), for the defendant.

PEASLEE, J. This is a continuation of the litigation which begins with *Maxfield* v. *Lumber Co.*, 74 N. H. 158. After the de-cision of that case a trustee was appointed to succeed Clark, who had died before the petition for the appointment of a new trustee was filed. *White River Lumber Co.* v. *Clark, post.* The new trustee brought this writ of entry to oust the defendant, who was in possession under his tax title. Upon the trial a nonsuit was moved for upon various grounds, all relating to supposed deficiencies in the plaintiff's evidence of title.

The evidence tended to show that, beginning in 1835, Franklin Pierce took conveyances of interests in the demanded premises. He was in possession of them before 1863, fenced them and pas-tured colts there, and in the last mentioned year opened and oper-ated a plumbago mine. In December, 1863, he conveyed to Robert L. Clark, in trust, and Clark operated the mine for a short time.

Upon these facts it was not essential for the plaintiff to prove title from the state, nor in the grantors of Franklin Pierce. *Maxfield* v. *Lumber Co., supra.*

Clark and all the original beneficiaries named in the trust deed are dead, and from this it is argued that the trust has terminated and that there is now nothing a trustee can take under the original deed. Pierce conveyed to Clark all Pierce's interest in the land. The deed recites his intent—"to convey all the land owned by him in Goshen." The habendum is to "Clark and his heirs and assigns," in trust to manage the property for certain beneficiaries, and to convey at the direction of a majority of the *cestuis*, or their legal representatives. Clark's covenant to perform the trust runs to the *cestuis* and "their legal representatives." It seems clear that a fee was thus conveyed, and that upon the decease of a *cestui* his share went to his "legal representatives." This term is a comprehensive one and is freely used in a general rather than a technical sense. See 25 Cyc. 175, *et seq.*, where the authorities for its use are collected. Reading the deed as a whole, the reasonable conclusion to be drawn is that the grantor intended to part with his whole estate. The parties probably intended to exploit a plumbago mine; but the fact that this enterprise failed did not destroy their interest in what value the land in fact possessed. Nor does the fact that no sale was made by the trustee during his life, or the life of any of the original beneficiaries, extinguish the title of those who can now prove their succession as the "legal representatives" of the *cestuis* named in the deed. A mere failure to assert a title does not amount to an abandonment of it, unless there is some adverse claim. *Great Falls Co.* v. *Worster*, 15 N. H. 412, 447.

The claim that the property was abandoned because the possession was left vacant for twenty years after the death of the first trustee is not supported by the facts. Clark died in 1889, and Glynn was appointed in 1908. The suggestion that by the terms of the trust deed the property descended to Clark's heirs need not be considered, as the heirs have conveyed to the plaintiff any interest they might assert.

The question of laches upon the part of the beneficiaries does not appear to be material to this controversy. It is not claimed that this defendant bought the tax title because the conduct of the *cestuis* had led him to believe that there was no one to contest its validity. There was no evidence that the defendant's conduct was or could have been influenced (in a legal sense) by the fact that no one was in the actual occupation of the property taxed.

Upon petition of the grantee of one or more of the *cestuis*, the plaintiff Glynn was appointed trustee. It thereupon became his

duty to do what was necessary to protect the trust estate. This would include the reclamation of the property and the recovery of damages for injuries to it. What disposition he shall hereafter be ordered to make of it, or of the damages he may recover, is an inquiry which is not involved in this case. There was sufficient evidence to warrant the finding that Glynn had a title based upon conveyances and possession antedating the assessment of the tax under which the defendant claims, and the motion for a nonsuit was properly denied.

At the close of all the evidence the defendant moved for judgment, upon the ground that, if there are errors in the assessment which is the foundation of his title, that proceeding is in the nature of a judgment and cannot be attacked collaterally. The statute empowers the selectmen to create a judgment lien for taxes on the lands of non-residents in certain prescribed ways. Unless appealed from, their judgment is conclusive that the property was taxable and as to the amount it should be taxed for. *Canaan* v. *District*, 74 N. H. 8. But when such a judgment is relied upon to support a title acquired under it, the proceedings of the selectmen may be subjected to investigation so far as to determine whether they were such as the tribunal could take upon the facts of the particular case. It is unnecessary to cite authorities to the proposition that in this state tax assessments have always been open to this attack in a proceeding like the present one.

The specific complaint against this tax is that it was assessed in the name of one who was neither the owner nor the original proprietor of the land, and who was not in possession or occupation of the premises. Such an assessment of land belonging to non-residents is illegal, and a sale and conveyance of it for the non-payment of the tax transfers no title to the purchaser at the tax sale. *Thompson* v. *Ela*, 60 N. H. 562; *Lime Rock Bank* v. *Henry*, 69 N. H. 298.

The plaintiff has the superior title to the land. Upon what terms justice may require the judgment in his favor to be entered (Laws 1895, c. 64, s. 1) is a matter to be considered in the superior court. *Greeley* v. *Beckman*, *ante*, 413.

*Case discharged.*

All concurred.