632 A.2d 447

**H. Susanna CRISTOFANI**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, Maryland.**

**No. 128, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Nov. 2, 1993.

Kimberly D. Marshall, Greenbelt, for appellant.

Roger C. Thomas (Sheldon L. Gnatt and Reichelt, Nussbaum, Brown, Dukes & LaPlaca, on the brief), Greenbelt, for appellee.

Argued before BISHOP, ALPERT and CATHELL, JJ.

CATHELL, Judge.

H. Susanna Cristofani appeals from the judgment of the Circuit Court for Prince George's County dismissing her amended complaint to quiet title, which was based upon adverse possession and/or abandonment by the appellee, Board of Education of Prince George's County. On appeal she asks the following questions, which we paraphrase:

 1. Whether the trial court erred in dismissing her complaint on the basis that she had failed to allege any act on the part of appellee which would indicate an intent to abandon.

 2. Whether the trial court erred in granting the dismissal on the ground that she failed to state a claim upon which relief would be granted in that a possessory interest in land cannot be acquired by abandonment.

■ The determinative issue is: May a fee simple interest in land be lost by abandonment? We hold that it cannot and shall affirm the judgment of the circuit court, which was pronounced by Judge Salmon. We explain.

### The Facts

The Board owned property adjacent to appellant's property. A fence existed inside the Board's property line that was adjacent to appellant's property. The fence was not, however,

on the property line but some distance within the Board's property leaving a portion of that property outside of the fence. Appellant, over a period of years, planted fruit trees on the Board's property between the fence and the Board's property line. Appellant's complaint below claimed that portion outside of the fence as her property under the theory of abandonment.

## The Law

Applied to the circumstances surrounding this case, the theory of abandonment is primarily a part of easement law, *i.e.*, the right to utilize land owned by others and the extinguishment of that right.[1] Abandonment is but one method wherein dominant users of easements can relinquish their rights to the servient owners. The early case of *Wright v. Freeman*, 5 H. & J. 467 (1823), concerned extinguishing an easement over private property by non-use (abandonment). There, non-use created a presumption of "release of the right" to the servient holder. The Court stated:

> If therefore the adversary user of a right of a way over the lands of another for twenty years, shall be a sufficient foundation to presume that the right originated in grant, it must follow, upon every principle, that the non-user of the right may be extinguished, by presuming a release of it for the purpose of *quieting the possession.* [Emphasis added.]

---

1. Abandonment is a concept in other areas such as zoning, *i.e.*, abandonment of non-conforming uses, *Dorman v. Mayor and City Council of Baltimore,* 187 Md. 678, 51 A.2d 658 (1947), and *Beyer v. Mayor and City Council of Baltimore,* 182 Md. 444, 34 A.2d 765 (1943); abandonment of equitable title acquired at judicial sale, *Merryman, Trustee v. Bremmer,* 250 Md. 1, 241 A.2d 558 (1968), and *Hull v. Clemens,* 200 Or. 533, 267 P.2d 225 (1954); abandonment of street assessments, *Mayor and City Council of Baltimore v. Hettleman,* 183 Md. 204, 37 A.2d 335 (1944); abandonment of maritime vessels, *Steinbraker v. Crouse,* 169 Md. 453, 182 A. 448 (1936); abandonment of trade marks, *Sherwood Company, Inc. v. Standard Distillers Products, Inc.,* 177 Md. 455, 9 A.2d 842 (1939); etc. Misplaced personal property is not abandoned, *Kimbrough v. Giant Food, Inc.,* 26 Md.App. 640, 339 A.2d 688 (1975). See also the Uniform Disposition of Abandoned Property Act, Title 17, Commercial Law Article.

*Id.* at 477. The court, in using the term "quieting the possession," was talking about the fee simple owner's possession. It was stating that, if a right of way can be acquired against a fee simple owner by adverse user, the right to use the way could also be released (or abandoned) by non-use. See also *Cherry v. Stein,* 11 Md. 1, 21–22 (1858). In *Browne v. The Trustees of the Methodist Episcopal Church in the City and Precincts of Baltimore,* 37 Md. 108, 119–20 (1872), the Court opined:

> If the right ... had been acquired ... by *adverse user,* for twenty years; its *non-user* for a like space of time, would extinguish any right they acquired ... because such *cesser* to use the road would afford legitimate presumption of a release of the right.
>
> . . . .
>
> Whilst a grant of a right of way may be presumed, from its long use and enjoyment, the release of such acquired right may be inferred from its continued abandonment, or forbearance to use it. The presumptive grant, and the presumptive release, rest on the like basis.... [Citation omitted.][2]

*See also Allori v. Dinenna,* 188 Md. 1, 4, 51 A.2d 819 (1947) (where as dicta the Court said, "[W]here the use of an alley has been abandoned ... [and the servient owners act in reliance on this, the dominant tenants] are not entitled to the aid of a court of equity to establish his or their right to the easement.") Also, in *Maryland and Pennsylvania Railroad Co. v. Mercantile–Safe Deposit and Trust Co.,* 224 Md. 34, 39, 166 A.2d 247 (1960) (*Ma and Pa*), the Court stated:

> The general rule is that the right and title to a *mere* easement in land acquired by a *quasi*-public corporation ... for a public purpose is dependent upon the continued

---

2. In *Browne,* the abandonment had in fact existed for more than the period for the creation of title based upon adverse possession. Thus, the Court discussed it in those terms. Generally, the authorities elsewhere do not ascribe to the theory of abandonment of easements a requirement that the right be abandoned for a specified period of time.

use ... for that purpose, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner....

*Ma and Pa* emphasizes that the theory of abandonment applies to real property rights less than fee simple ownership, *i.e.*, easements, uses, etc.

 Even under the theory of abandonment, if it were found to be applicable in the case at bar and then if the facts supporting abandonment were to be found, the property right abandoned reverts to the fee simple owner of the land. The fee simple owner, in the case at bar is the appellee, not the appellant. *See Mayor of Baltimore v. Chesapeake Marine Ry. Co.*, 233 Md. 559, 576, 197 A.2d 821 (1964) (where abandonment of a street *easement* by Baltimore City was claimed to have vested the easement in the fee simple owner, thus merging it in "what in effect is equitable prescription." The Court acknowledged that easements may be abandoned though they found no abandonment in that case. But the abandonment theory was only discussed in relation to easements.)

In *Shuggars v. Brake*, 248 Md. 38, 234 A.2d 752 (1967), the Court found that the easement had not been abandoned merely because the servient tenant had not often used it for nine years. The Court, in rejecting the theory of abandonment, noted critically that the appellant's assertion was in essence an improper claim of abandonment of fee simple property.

That the road was not often used ... during the nine-year period was attributable to the fact that she no longer lived on the parcel of land. To say that the owner had abandoned the use under the existing circumstances would be tantamount to saying that she had abandoned the land.

*Id.* at 46, 234 A.2d 752. *See also Ayres v. Hellen*, 235 Md. 258, 261, 201 A.2d 509 (1964); *Millson v. Laughlin*, 217 Md. 576, 588–89, 142 A.2d 810 (1959); *Klein v. Dove*, 205 Md. 285, 295, 107 A.2d 82 (1954) ("[m]ere non-user of a right of way is not necessarily an abandonment of it"); *Knotts v. Summit Park*

*Co.*, 146 Md. 234, 240, 126 A. 280 (1924) (*"mere"* erection of a fence across a right of way will not destroy an easement); *Vogler v. Geiss,* 51 Md. 407, 410 (1879) ("a party entitled to a right of way *or other mere easement* in the land of another may abandon ... such right...." (emphasis added)).

Appellant cites *Messersmith v. Mayor and Common Council of Riverdale,* 223 Md. 323, 164 A.2d 523 (1960), to support her claim to a fee simple interest in the disputed property under the abandonment theory. Neither we, nor the trial court, construe it as supporting her argument. Especially in light of the cases we cite earlier, we perceive *Messersmith* as holding that abandonment is not applicable to divesting or acquiring title to fee simple property.[3]

In that case, the Messersmiths had enclosed and used the city-owned property at issue for over thirty-three years before suing to quiet title under an abandonment theory. The Messersmiths conceded that ordinarily adverse possession did not apply to the city-owned property but that since abandonment had occurred, the rights of the public to be free from having the public's property adversely possessed, were not affected. The *Messersmith* Court opined:

> The gist of the abandonment contention is apparently based on the theory that the town, having failed to exercise any of the usual or normal functions of ownership over the lot, title thereto has been abandoned. The claim is without substance.

*Id.* at 326, 164 A.2d 523.

Appellant emphasizes the Court's dicta at 326–27—that in order for there to be an abandonment "[t]here must always be some affirmative or straight-forward act to indicate an intention to abandon" and apparently proffers that the maintenance of the fence was that act in the case *sub judice.* Appellant failed to emphasize the very next statement of the Court, that

---

**3.** 1 Am.Jur.2d *Abandonment, Lost, Etc., Property* § 13, at 14 (1962) cites *Messersmith* for the proposition that "[o]wnership of a possessory interest in real property cannot be lost solely by abandonment."

irrespective of an intention to abandon, it has been held that the abandonment of a possessory interest in real property is different from the rule applicable to the possession of an easement or the ownership of personal property in that ownership of a possessory interest in real property, such as there was in this case, can never be lost solely by abandonment.

*Id.* at 327, 164 A.2d 523. Then, rather than clearly stating that abandonment theory could not be used to divest fee simple title to real property, the Court disposed of the case by opining that "[i]n any event" no intention to abandon had been shown. *Id.*

By using the phrase *"solely* by abandonment" and deciding the case on the premise that proof of intent was lacking "[i]n any event," the Court gave the appearance of using "abandonment" principles to decide a case where abandonment principles were inappropriate. Appellant seized upon that enigmatic treatment as opening the door to the seizure of real property under the theory of abandonment. Judge Salmon closed the door. We shall attempt to lock it.

*Messersmith,* as indicated, involved municipal property rights. There is a statutory requirement (as opposed to a theory) governing municipal property and its usefulness. Maryland Annotated Code Article 23A, section 2(b)(24) (Annotated Code, 1951, section 2; 1947 ch. 731, sec. 2), required (as it now does) that municipal property cannot be sold until a "legislative body determines that the same is no longer needed for any public use." This statutory requirement for a "no need" finding might be characterized as requiring a formal abandonment of a property's public use characterization. This finding must necessarily follow actual non-use. Thus, under the statute, a mere non-use would not authorize the sale or conveyance of public property. There must also be a specific legislative finding that no public need or use for the property remains. *See Inlet Assocs. v. Assateague House Condominiums Ass'n,* 313 Md. 413, 545 A.2d 1296 (1988) (Art. 23A2 confers ordinance making power. Thus, an ordinance is required in order to convey city street to developer). Whether

this statutory requirement led the *Messersmith* Court to use the phrase "solely by abandonment" is unclear. Abandonment, under some circumstances, might also be evidence relevant to adverse possession or prescription issues. Whether the Court's use of the term "solely by abandonment" referred to it in connection with adverse possession or prescription theories is equally unclear. What is clear is that the abandonment theory does not apply to divest title to fee simple property.

Appellant noted in her brief that we quoted *Messersmith* in *King v. Bankerd,* 55 Md.App. 619, 623, 465 A.2d 1181 (1983), *aff'd,* 303 Md. 98, 492 A.2d 608 (1985), and held that the doctrine of abandonment applied to claims for a possessory interest in real property. That was not our holding. In *King,* Bankerd had executed a power of attorney that allowed King to transfer the subject property. Bankerd disappeared and his wife subsequently requested that King convey Bankerd's interest to her. King, believing Bankerd "had abandoned his interest in the property," conveyed Bankerd's interest, without compensation for the conveyance, to Mrs. Bankerd. *Id.* at 622–23, 465 A.2d 1181. Mr. Bankerd reappeared, filed suit against King for wrongful execution of the power of attorney, and received a judgment against him. *Id.* We affirmed. In doing so, we merely noted the *Messersmith* language. We did not hold that the theory of abandonment can be used to divest a person's fee simple ownership of property.

Authorities elsewhere have long held that abandonment cannot divest the title to fee simple property.

1 Am.Jur.2d *Abandonment, Lost, Etc., Property* sections 13 and 14, at 14–15 (1962), provides:

> The general rule is that the legal doctrine of divestiture of title to property by abandonment is not applicable as to real property where the state has passed a perfect legal title thereto; such a title remains vested until it passes by grant, descent, adverse possession, or some other operation of law such as by escheat or forfeiture.
>
> . . . .

While a corporeal hereditament cannot be the subject of abandonment, easements, franchises, and other incorporeal hereditaments may be lost by abandonment. [Footnotes omitted.]

*Black's Law Dictionary* 726 (6th ed. 1990), defines corporeal and incorporeal hereditaments:

[C]orporeal hereditaments were physical objects, comprehended under the term land ... while incorporeal hereditaments existed only in contemplation of law ... affiliated with chattel interests.

*Corporeal hereditament.* Substantial permanent objects which may be inherited. The term "land" will include all such.

*Incorporeal Hereditament....* A right issuing out of a thing corporate (whether real or personal) or concerning or annexed to or exercisable within the same. A right growing out of, or concerning, or annexed to, a corporeal thing, but not the substance of the thing itself.

1 Basil Jones, *Tiffany Real Property* § 4 at 8–9 (3d ed. 1939), defines corporeal and incorporeal:

The only corporeal thing of a "real" character is land, or whatever may be considered as a part thereof. Of incorporeal things, Blackstone enumerates, under the name of "incorporeal hereditaments," ten varieties, to wit, advowsons, titles [tithes], commons, ways, offices, dignities, franchises, corodies, annuities and rents. [Footnotes omitted.]

Tiffany then notes that advowsons (rights of appointment to church office or benefits), tithes (rector's rights to a tenth of parishioners' annual increase), and "dignities" (titles of nobility), do not exist in this country; and that corodies (rights to sustenance at monasteries) are obsolete. He then notes that "commons," "ways," and "rents" belong to the term of "rights as to the use and profits of another's land."

In *Rod v. Campion,* 464 S.W.2d 922, 925 (Tex.App.–Austin [3d Dist.] 1971), the Texas Court of Civil Appeals stated:

[O]wnership of vested title in land, as in this case a fee simple title, may not be divested by abandonment. Such

may have been possible in Texas prior to adoption of the common law in 1840,[4] but since that time abandonment of title has not been recognized.

*See also Hendrix v. Hendrix,* 256 Ark. 289, 506 S.W.2d 848, 851 (1974) ("Title to realty may not be divested by abandonment alone.")

The Supreme Judicial Court of Maine, in *Picken v. Richardson,* 146 Me. 29, 77 A.2d 191, 193–94 (1950), opined that the great weight of authority [reveals] that a good legal fee simple title cannot be lost by abandonment.

. . . .

. . . It thus appears that the common law rule . . . is that a perfect legal title cannot be lost by abandonment.

*See also Goldman v. Quadrato,* 142 Conn. 398, 114 A.2d 687, 689–90 (1955) ("A legal title perfected into a grant or vested by deed . . . may never be lost by abandonment. . . . Title to realty does not pass merely through the inaction of its owner." (footnote and citations omitted)); *Town of Marne v. Goeken,* 259 Iowa 1375, 147 N.W.2d 218, 223–24 (1966); *O'Dwyer v. Ream,* 390 Pa. 474, 136 A.2d 90, 95 (1957) ("inchoate rights may be abandoned but abandonment is not predicable of perfect titles").

In *Keeler v. McNeir,* 184 Okla. 244, 86 P.2d 1004 (1939), it was alleged that the owner had never seen the land, paid taxes on it, received any rent from it or ascertained any interest in the land and thus had abandoned the land. The Court held:

Although the doctrine of abandonment may in some cases be applied to inchoate or equitable rights in real estate, it is *never* applicable to a perfect fee simple title, except as an incident of divesture by estoppel as working into and being sometimes a part of the process wherein another acquires title by adverse possession.

. . . .

---

4. Under Spanish law property acquired by Spanish or Mexican grant could, under some circumstances, be abandoned. *Harris v. O'Connor,* 185 S.W.2d 993, 1012 (Tex.App.–El Paso [8th Dist.] 1944).

. . . [F]ee simple title is never lost by mere abandonment such as occurs in losing title to personal property.

*Id.* 86 P.2d at 1006 (emphasis added). The *Keeler* court then includes an extensive list of other state citations adopting that view.[5] The Court of Appeals of Kentucky in *Turk v. Wilson's Heirs,* 266 Ky. 78, 98 S.W.2d 4, 10 (1936), opined:

Wilson had perfect paper title to this land going back to the [origins of the] commonwealth and he was in possession of it.

. . . A vested fee-simple title to real estate cannot be abandoned. If a man should go away and leave it for forty, fifty, or any other number of years, and no one should seize and occupy the property adversely, or it should not be sold for taxes, the returning owner would perhaps find his property grown up with saplings and bushes, but he would find his title unimpaired.

*See also United States v. 179.7 Acres,* 107 F.Supp. 265, 266 (E.D.Ky.1952) (an adverse possession case where "[d]isseizin of the holder of the legal title 'cannot be accomplished by any

---

**5.** 1 Am.Jur. 5; 1 R.C.L. 3; annotations at 135 Am.St.Rep. 890 and 19 Ann.Cas. 375; 1 C.J. 10; 1 C.J.S., *Abandonment,* § 5, p. 14; *Lindblom v. Rocks,* 9 Cir., 146 F. 660, 77 C.C.A. 86; *East Tennessee Iron, etc. Co. v. Wiggin,* 6 Cir., 68 F. 446, 15 C.C.A. 510; *Carmichael v. Arkansas Lumber Co.,* 105 Ark. 663, 152 S.W. 286; *Northern Assurance Co. v. Stout,* 16 Cal.App. 548, 117 P. 617; *Tarver v. Deppen,* 132 Ga. 798, 804, 65 S.E. 177, 24 L.R.A., N.S., 1161, and note; *Barett v. Kansas, etc., Coal Co.,* 70 Kan. 649, 79 P. 150; *Glynn v. Maxfield,* 75 N.H. 482, 76 A. 196; *Robie v. Sedgwick,* 35 Barb., N.Y., 319; *Sharkey v. Candiani,* 48 Or. 112, 85 P. 219, 7 L.R.A., N.S. 791; *Parks v. Pennsylvania R. Co.,* 301 Pa. 475, 152 A. 682; *Kreamer v. Voneida,* 213 Pa. 74, 62 A. 518; *Bear Valley Coal Co. v. Dewart,* 95 Pa. 72; *Mayor, etc., of Philadelphia v. Riddle,* 25 Pa. 259; *Arnold v. Cramer,* 41 Pa.Super. 8; *Calloway v. Sanford,* Tenn.Ch.App., 35 S.W. 776; *Southern Coal & Iron Co. v. Schwoon,* 145 Tenn. 191, 239 S.W. 398; *Sowles v. Minot,* 82 Vt. 344, 355, 73 A. 1025, 137 Am.St.Rep. 1010, and note; *Perkins v. Blood,* 36 Vt. 273; *Doe v. Craft,* 3 N.B. 546; *White v. Shippee,* 216 Mass. 23, 102 N.E. 948; *Sandy River Coal Co. v. Champion Bridge Co.,* 243 Ky. 424, 48 S.W.2d 1062; *Cox v. Colossal Cavern Co.,* 210 Ky. 612, 276 S.W. 540; *Powell v. Bowen,* 279 Mo. 280, 214 S.W. 142, judgment set aside and reinstated April 1, 1920, case reargued May 10, 1920, and on May 18, 1920, former opinion again adopted; *Allen v. West Lumber Co.,* Tex.Com.App., 244 S.W. 499, reversing, Tex.Civ.App. 223 S.W. 529.

form of absent treatment.' "); *Commonwealth, Department of Highways v. Turner,* 386 S.W.2d 726, 727 (Ky.1965) ("It is settled in this state that real property cannot be abandoned.... We recognize that the doctrine of abandonment is sometimes applied to mining rights, but not to fee simple title in real estate.").

A few states have stated that title to real property can be divested by abandonment, however, it has usually been in relation to mineral or water rights, or, as we have stated, pursuant to the terms of early Spanish or Mexican grants under Spanish law.

Idaho is one of those states that, at least facially, appears to have determined that real property can be abandoned. But it acknowledges in *Hawe v. Hawe,* 89 Idaho 367, 406 P.2d 106, 113 (1965), that most of its cases "have arisen over mining interests or water rights." *Hawe* quoted extensively from *East Tennessee & Iron & Coal Co. v. Wiggin,* 68 F. 446, 449 (1895), accepting that

> Precisely what is meant by "an abandoned" legal title is hard to define. If it is the valid legal title, it is inconceivable how it can be abandoned.... Plaintiffs did not abandon their title by neglecting for 40 years to take possession or bring action. If there has not been a devolution of title by operation of an adverse possession, their title is perfect, and their right of recovery would not be affected by a theoretical abandonment predicated alone upon a neglect of their estate.

*Hawe,* 406 P.2d at 113.

■ The appellant has not raised on appeal Judge Salmon's judgment that appellee is a state agency and thus not subject to adverse possession in the case *sub judice.* Judge Salmon was correct. In essence, it appears that the appellant, when confronted with the trial court's decision on adverse possession, was left only with a claim based upon abandonment. *Messersmith's* language—or appellant's interpretation of that language—was perceived as a way to continue to assert pos-

session over the portion of appellee's property planted with appellant's fruit trees.

If we consider the result of accepting abandonment as a method for divesting fee simple ownership of property, it clearly shows the doctrine's inapplicability generally, and in this case specifically. If the title to fee simple real property could be abandoned, what would happen to it? It could not revert to the fee owner, as the fee owner was the person who abandoned the property. Thus, no one would own it, nor could anyone thereafter adversely possess it because there would be no fee owner against whom the adverse possession would be adverse, open and hostile. Would it escheat to the State? Would the law of land patents then apply?

How could fee simple title to any property ever be conveyed with certainty if prior non-use of the property could cause the title to be divested under a theory of abandonment? How would a prospective purchaser discover abandonment? Bare abandonment by its very nature is not amenable to recordation in the land records. If abandonment caused a divesture of fee simple title no title to any land would be safe. It would be impossible to establish that the property had not been abandoned by prior owners in the chain of title.

 Abandonment, as applied to less than fee interests, at best, creates a reversion of the abandoned right to the fee owner. Abandonment, in respect to real property, *i.e.*, the release of an ancillary right in the realty by the failure to utilize it, creates no title. Rather, abandonment removes an encumbrance, leaving an unencumbered fee simple ownership of the land.

Simply stated, while title to fee simple property may be lost or divested through adverse possession (excepting state property and/or governmental property), failure to pay taxes, judicial sales, and the like, it cannot be lost by abandonment. You can devise, bequeath, grant, deed, and give fee simple property away but you cannot abandon it. We know of no

authority that holds that fee simple title may be abandoned. We hold that it cannot.[6]

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

6. We do not decide this case on the basis that one of the elements of abandonment—intent—is lacking. We do, however, note that even if abandonment was applicable the mere erection of a fence would not support an inference that the appellee was abandoning the property outside the fence. Discussing the theory of abandonment in our easement (condemnation) case of *Peck v. Baltimore County*, 41 Md.App. 323, 397 A.2d 615, *rev'd on other grounds*, 286 Md. 368, 410 A.2d 7 (1979), we quoted a passage from 2 *American Law on Property*, section 8.97 (1952 & Supp.1962):

> "To produce an abandonment of an easement there must be action respecting the use ... which indicates an intention never to make the use again."

*Peck*, 41 Md.App. at 328, 397 A.2d 615. We also stated:

> The relocation of a highway is an example ... where an easement ... may cease ... [but] there must be an intention [even then] ... that "the new way be wholly substituted for the old."

*Id.* at 328–29, 397 A.2d 615 (citations omitted).