## FRENCH v. SPALDING & a.

A collector's deed is admissible as evidence for the purchaser in a suit in which the validity of the sale is brought in question.

It is sufficient for the purchaser to show that the assessors, collector, and chairman of the county convention were officers *de facto*.    Whether the chairman is an officer included within the provisions of General Laws, c. 18, *s.* 4, *quære.*

The record of sales for taxes in the town-clerk's office is evidence for the purchaser.

Parol evidence is admissible to show that a sale for taxes was made within the hours fixed by statute.

A sale of land for taxes is not invalidated by setting up the land to be sold to the bidder who will pay the taxes and costs for the smallest quantity or share.

A public record, amended by leave of court on the trial of a suit, is not inadmissible in other suits because of such amendment.    The amendment is not conclusive against persons not parties to the suit in which the amendment was made; and they may obtain further amendments conformable to the fact.

The assessment of a sum exceeding the amount of taxes legally authorized does not render the assessment invalid beyond the amount of the excess.

When the land of a non-resident is sold for taxes, the first publication of the advertisement is seasonably made on or before the first day of January following the assessment.

In general, an exception not taken at the trial is waived.

The statute requiring selectmen to insert in the list of taxes assessed on the real estate of non-resident persons the name of the owner, if known, otherwise the name of the original proprietor, if known (G. L., c. 59, s. 1), does not require them to determine the question of ownership as between different parties or claimants, nor to incur the risk of making the assessment in the name of a party not the legal owner. When there is a dispute as to the title, or when they have a reasonable doubt as to the name of the owner, or of the original proprietor, they may tax the land in the name of "owner unknown," in addition to "such description as the land may be readily known by." *Thompson* v. *Gerrish,* 57 N. H. 85, distinguished.

An assessment of a tax on non-resident land is not invalidated by the omission of the name of the owner whose ownership is known to one of the assessors.

WRIT OF ENTRY, to foreclose a mortgage given by George Taft to the plaintiff. The defendants' title is founded on a sale of the demanded premises by the collector of taxes of Mason for the years 1873 and 1877. The sale for the tax of 1873 was made by Fox, collector for that year, to Barrett, one of the defendants. Subject to the plaintiff's exception, the defendants were allowed to introduce the deed of Fox to Barrett, made in pursuance of the sale. The evidence tended to show that the selectmen who assessed the tax in 1873 were acting as such. The court ruled that it was unnecessary to show a regular election, and the plaintiff excepted. The defendants offered the original appointment or commission of Fox as collector, to which the plaintiff objected, because the town-clerk did not certify upon it and upon the record of the same on the town books the date of its record. It appeared from the appointment and record that the collector was appointed May 24, 1873, and took the oath on the same day. The date of the record was not stated on the town books. The next date following on the books is June 9, 1873. There was no other evidence tending to show when that record was made. To show the due assessment of the county tax for the year 1873, the defendants offered the record of the county convention for the year 1872. The plaintiff objected to its admission because it did not appear that the chairman and clerk were sworn; but the court received it, and the plaintiff excepted. There was evidence *aliunde* tending to show that the chairman and clerk acted as such, and that the clerk was sworn. Subject to the plaintiff's exception, the court admitted in evidence a book, purporting to be the record of sales for non-resident taxes,

and containing the record of the sale for the taxes of 1873. It was not dated, and there was no evidence, aside from the book itself, tending to show when it was made or recorded. It was produced by the present acting town-clerk, and the evidence tended to show that he received it from his predecessor as a part of the town records. Against the plaintiff's objection, the defendants were permitted to show that the sale was made within the hours fixed by statute, the record being silent on that point. The record showed that the sale was made on the day named in the notice, and to the highest bidder.

The plaintiff objected to the record of the sale for the tax of 1873, because it appeared from it that the land was set up to be sold to the bidder who would take the smallest quantity or share thereof, and pay the taxes and costs; but the court overruled the objection, and the plaintiff excepted. Against the plaintiff's objection, the defendants were allowed to show that the land in question was sold to the person who would pay the taxes and costs for the least amount of land. The evidence tended to show that in the action *Taft* v. *Barrett*, 58 N. H. 448, the record of the sale was amended by leave of court. Subject to the plaintiff's exception, the defendants were allowed to read the record as amended. The plaintiff had no notice of the application to amend, or opportunity to be heard. The collector testified that the record as amended was correct. The plaintiff offered evidence tending to show that there was an excess of seventy cents in the overlay included in the tax of 1873. The court excluded the evidence as being immaterial, and the plaintiff excepted.

The plaintiff objected that the sale for the non-payment of the tax of 1877 was invalid, because it did not appear that the notice of sale was published three weeks successively prior to January 1, 1878. The last publication was after that date. The newspapers containing the notices of the sale were produced by the town-clerk, but there was no evidence when they were filed with him. The record of the sales for 1877, as recorded in the book before named, was produced; but it did not show, and there was no evidence, when it was recorded, and the plaintiff objected to the admission of the record, as furnishing no sufficient evidence of the filing of the papers, or of the account of sales; but the evidence was admitted, and the plaintiff excepted. The evidence tended to show that one of the notices of the sale for 1877 was posted at the railroad depot in Mason, and the plaintiff contended that it was not a public place within the meaning of the law. On this question evidence was introduced by both parties.

The demanded premises were taxed in 1873 as non-resident, and were described in the assessment roll as follows: "Stearns farm, formerly owned by Samson Farnsworth, 150 acres." There was evidence tending to show that the premises were conveyed to George Taft in 1871. No person was then living upon them.

They had been previously owned and occupied by one Stearns for many years, and the next preceding owner and occupant for many years was Samson Farnsworth.     They were a farm of about 150 acres, bounded as described.   Both the plaintiff and Taft lived in the adjoining town of Townsend, Mass.  The plaintiff claimed that the premises should have been taxed to Taft, the mortgagor, as owner.   On this point, Russell, one of the selectmen in 1873, testified as follows: " We understood that Taft and Larkin bought the land of Stearns in 1870.   There had been some question as to the ownership of the property, and so we taxed it in this way. We intended to do our business legally.   We knew Taft was in possession, and had an agent acting for him.   We did not know whether he in fact owned it or not.   He redeemed the land when sold in 1871 and 1872.  We taxed it in this way because there had been difficulty in previous years in collecting taxes assessed against Taft, who denied his ownership of the land, although he was in possession.   I knew Taft claimed the land."   Goodwin testified as follows: " I acted as one of the selectmen in 1872, 1873, and 1874, and as collector in 1871 and 1872, and the tax on these premises was committed to me for those years.   I sold the Stearns farm, and it was redeemed by George and James Taft.   Both were present, but which paid the money I cannot say.   Both came together, and paid the tax."   Barrett, the other selectman for 1873, testified as follows: " I did not know the owner of the premises.   I had no reason to suppose Taft owned them.   I supposed he did not own them."   The premises in 1877 were taxed to " owner unknown." The title was in litigation when the taxes for that year were assessed.

The defendants introduced evidence tending to show that the list of non-resident taxes for 1873, lodged with the deputy secretary of state, was lost ; and a record of the list in the office of the secretary of state, purporting to be made by the then deputy secretary, was produced by the present deputy secretary, and admitted without objection, to prove the fact that such list was properly deposited with the deputy secretary.   The plaintiff claimed that the amount of the winter highway tax was incorrectly stated as $9.80 in the record, when it should have been $9.60.   No question was made that if stated at $9.80, the error was material.   The evidence tended to show that Fox, collector for 1873, made the notices of the sale from the list deposited with the deputy secretary, and that the amount of the winter highway tax was correctly stated therein.

The only questions which either party desired the jury to determine were,—1. Was the depot at which the notice of the sale was posted a public place?   2. Did the list lodged with the deputy secretary of state at Concord contain the true amount of the tax on the premises in question?   3. Did either of the selectmen, at the time of the assessment of the tax in 1873, know who the owner

of the land in question was? The jury answered the first and third questions in the affirmative, and the second in the negative. On the last question the defendants requested the court to instruct the jury "that knowledge of the true owner by one of the selectmen would not invalidate the title of a *bona fide* purchaser without notice of any such knowledge of the true ownership." There was no evidence that either of the defendants had notice or knowledge of the facts as to the ownership of Taft, as testified to by Russell and Goodwin. The court declined to give the instructions requested, but instructed the jury that "if either of the selectmen knew who was the actual owner, or who was in possession claiming to be the owner, it would be such knowledge of the ownership as would require them to tax the property to the person making such claim of ownership, as the owner." To the refusal to give the instructions requested, and to those given, the defendants excepted. The defendants moved to set aside the second finding as against evidence; and if the plaintiff's right to recover depends upon the answer of the jury to that question, the finding on this point should be set aside, and a new trial had.

*D. Cross*, *R. M. Wallace*, and *C. R. Morrison*, for the defendants.

*A. F. Stevens* and *B. Wadleigh*, for the plaintiff.

SMITH, J. 1. Proof of the deed from Fox to Barrett was only one of several facts which the defendants had to show to make out their title under the sale for the taxes of 1873. The deed was admissible as one of the steps they were compelled to take. Whether in the end they would be entitled to the verdict, depended upon their success in proving all the facts upon which their title rested.

2. It was sufficient to show that the selectmen who assessed the taxes, and the collector who collected them, were officers *de facto*. *Pierce* v. *Richardson*, 37 N. H. 309; *Prescott* v. *Hayes*, 42 N. H. 56, 58; *Roberts* v. *Holmes*, 54 N. H. 560; *Odiorne* v. *Rand*, 59 N. H. 504; *Lucier* v. *Pierce*, 60 N. H. 13.

3. It was also sufficient to show that the chairman of the county convention was such *de facto*. *Jaquith* v. *Putney*, 48 N. H. 138. It is therefore unnecessary to consider whether he is an officer coming within the provisions of Gen. Statutes, *c.* 17, *s.* 4 (G. L., *c.* 18, *s.* 4).

4. The record book of sales came from the proper custodian, and was properly received. 1 Gr. Ev., *ss.* 484, 485. It is evidence of every fact recorded which it was the duty of the collector to return. If the return was incorrect, it could have been amended upon application to the court, supported by evidence. The objections taken to the admissibility of the record do not appear to be true in fact. By an amendment, the record book has been made a part of the

reserved case. An inspection of it shows a compliance by the collector of 1873 and 1877 with all the requirements of Gen. Statutes, *c.* 55, *s.* 10, and shows that the account of sales returned, advertisement posted, and affidavit of posting were recorded by the town-clerk within ten days after the sale in each year. It also contains a certificate of the town-clerk that the newspapers containing the advertisements were filed with him within the same time.

5. Parol evidence was admissible to show that the sale was made within the hours fixed by statute. *Jaquith* v. *Putney*, *supra*, 141.

6. There was no irregularity in the way the land was put up at auction for the taxes of 1873. The statute requires the sale to be "for so much of the owner's estate as will pay the taxes and incidental charges." Gen. Sts., *c.* 55, *s.* 9. Although the record shows that the sale was to the highest bidder, it also shows that the land was set up to be sold to the bidder who would pay the costs and taxes for the least amount of land. This was a compliance with the statute. The highest bidder is in fact the person who will pay the taxes and costs for the smallest quantity or share of the land offered for sale. The parol evidence was not inadmissible (*Jaquith* v. *Putney*, *supra*), although it would seem unnecessary.

7. The record, as amended in *Taft* v. *Barrett*, stands as the record unless again amended. The amendment is not conclusive against the plaintiff, he not being a party to that suit; and undoubtedly it was open to him, or to any other person interested, to show that the record as amended is not a true record, and to obtain a further amendment. If there has not been a full hearing on this question, and if the plaintiff desires to be heard upon the correctness of the amendment, he can be heard at the trial term.

8. The act of 1871, *c.* 9, *s.* 1, provides that if the selectmen assess a sum exceeding that which they have a right to assess, the assessment is rendered invalid only as to the excess. The plaintiff offered to show that the selectmen assessed a tax larger by seventy cents than they had authority to assess in 1873. This sum distributed among the tax-payers in town would make no appreciable difference in the tax of each, and the maxim *de minimis* might well be held to apply. But if this were otherwise, the excess only being invalid, if the excess of the plaintiff's tax was capable of computation, he would have had the right to redeem by tendering so much of the tax as was valid, with interest and costs. *Taft* v. *Barrett*, 58 N. H. 447, 450.

9. Chapter 105, Laws of 1874, requires the collector to advertise property of non-residents on or before the first day of January; and *s.* 7, *c.* 55, Gen. Sts., requires the advertisement to be published three weeks successively, commencing at least eight weeks before the sale. Does this require the property to be advertised three weeks successively before the first day of January, or is it sufficient if the first publication is before that day? We are of opin-

ion this provision of the statute is met if the first publication only takes place before that time. That would enable the collector to complete the collection of his list of non-resident taxes during the financial year ending March 1. It is not probable that the legislature took a circuitous way of expressing their intention that he should advertise three weeks before the second day of January.

10. Whether the railroad depot in Mason was a public place seems to have been treated as a question of fact which the jury have settled. Evidence on that question was introduced by both parties without objection. Neither party seeks to disturb the verdict. Whether the question was partly one of fact and partly one of law (*Tidd* v. *Smith*, 3 N. H. 178, *Cahoon* v. *Coe*, 57 N. H. 556), or wholly one of fact, was not raised at the trial.

11. If the plaintiff desires a new trial on the question whether the amount of the winter highway tax was correctly stated in the list lodged with the deputy secretary of state, he can have it if the judge at the trial term thinks there is evidence on this point to be submitted to the jury.

12. The plaintiff seems to have taken the position during the trial that the assessment of 1877 was invalid for the reason that the land was taxed as non-resident, "owner unknown," the name of the owner being known to the selectmen; and he introduced evidence in support of this position. But the case finds that the title was in litigation, and the jury were not required to return a general verdict. There were only three questions which either party desired to have submitted to the jury, neither of which related to the knowledge of the selectmen of 1877 as to the ownership of these premises. As there was no request to submit this question to the jury, it cannot be raised here. When land in the non-resident list is not taxed in the name of an individual, the *prima facie* presumption is that the names of the owner and original proprietor were unknown. *Cardigan* v. *Page*, 6 N. H. 182, 192; *Jaquith* v. *Putney*, 48 N. H. 138, 139.

13. Were the instructions to the jury correct? The statute requires "the name of the owner, if known," to be inserted in the list. Gen. Sts., c. 50, s. 17. A court cannot dispense with this requirement, nor question the wisdom of its enactment. In *Cardigan* v. *Page*, *supra*, the land was taxed as non-resident, owner unknown. *Richardson*, C. J., said,—"If it was shown that the names of the original proprietors and of the owner were known to the selectmen, the list must be adjudged insufficient. For the statute expressly requires the names to be inserted if known." This decision was affirmed under a similar state of facts in *Ainsworth* v. *Dean*, 21 N. H. 400. In *Bowles* v. *Clough*, 55 N. H. 389, the land was taxed to a non-resident owner as resident without his consent. It was held that no distraint of personal property could be made to collect the tax. The statute is to have a reasonable interpretation in view of the object which it is intended to accom-

plish, which is notice of the tax.    "The meaning is, that the select-
men shall use their best endeavor to ascertain one and the other"
(present owner and original proprietor).    " To say that they are
bound at all events to judge right would lead to the greatest injus-
tice.    .   .   .   In discharging this part of their duty, as every
other, selectmen are not bound to judge right at all events, but to
act according to their best discretion."    *Harris* v. *Willard*, Smith
(N. H.) 63, 68.    It is often a nice question who the real owner of
a tract of land is.    Disputes are continually occurring, and much
of the time of courts is occupied in determining the ownership of
disputed tracts.    It was not intended that assessors should be
required to decide upon *ex parte* and imperfect testimony which of
two or more claimants is the actual owner of a piece of land upon
which they are called to assess a tax.    When there is a dispute as
to the title, or the assessors have any reasonable doubt as to the
name of the owner or of the original proprietor, they may tax it
in the name of " owner unknown " in addition to " such description
as the land may be readily known by."    Some remarks of mine in
*Thompson* v. *Gerrish*, 57 N. H. 85, may be in opposition to this
view. . They were unnecessary, for the decision in that case might
have been put upon other grounds, and they were not well consid-
ered.    Hill and Ewell owned the land at the time of the assess-
ment by an undisputed title, and one of the assessors knew they
claimed the ownership of the land.    The question whether the
assessors knew who the real owners were does not seem to have
been submitted to the jury.    It cannot be supposed that the court
in that case had in mind a case where the facts in regard to the
title were in dispute, as the evidence shows they were in this case.

It would not be a reasonable construction of the statute to hold
that it imposes upon assessors the risk of a correct decision of a
disputed or doubtful title, nor any duty which would be imprac-
ticable, or would seriously obstruct the collection of taxes.    It is
not required for the protection of the owner.    The presumption is
that his land will be taxed, and by a description " such as it may
readily be known by."    He should not be relieved from " his obli-
gation to contribute to the support of those governmental institu-
tions without which there would be no property and no law" (*Ja-*
*quith* v. *Putney*, 48 N. H. 138, 141), by a construction of the statute
which would be "intolerable in practice, and would seriously hinder
the assessment of taxes."    The assessor is not required to act upon
presumptions or probabilities, nor upon implied or express notice
of the existence of facts in determining the question of the owner-
ship of property which it is his duty to tax.    He is not required to
determine or to undertake to determine the question of ownership
as between different parties or claimants; nor to incur the risk of
making the assessment in the name of a party not the holder of
the legal title.    *Himmelmann* v. *Steiner*, 38 Cal. 175 ; *Carpenter* v.
*Dalton*, 58 N. H. 615.

14. The instructions requested were properly denied. *Cardigan* v. *Page*, 6 N. H. 182, 192; *Ainsworth* v. *Dean*, 21 N. H. 400, 407; *Thompson* v. *Gerrish*, 57 N. H. 85.

The plaintiff's exceptions to the tax of 1877 are overruled. His exceptions to the tax of 1873 are also overruled. There is to be a new trial on the second question submitted to the jury if he desires it, and if the judge at the trial term thinks there is evidence on that point for the jury. The defendant's exception to the instructions given is sustained.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.