Grafton,  ⎱
Dec., 1897. ⎰

## LIME ROCK NATIONAL BANK *v.* HENRY *& a.*

A tax sale of unimproved, non-resident lands is not invalid because the taxes thereon were not assessed in the name of an unknown owner, or in the name of one claiming title thereto, who was not in fact the owner.

TRESPASS, *quare clausum.* Facts found by a referee in part and agreed in part. The plaintiffs claimed title to two wild lots numbered 33 in ranges 18 and 19 in Bethlehem, under deeds of the collector of taxes of that town for the years 1850, 1851, 1852, and 1853, to their grantor. In each of the years 1850, 1851, and 1852, the town voted "to raise a sum equal to valuation" for the repair of highways and bridges. It was shown by the record of the collector's sworn certificate that for each of these years he duly posted an advertisement of the sale in two public places in the town and caused a copy to be published in " The New Hampshire Patriot" and in a county newspaper three weeks successively, the first publication being more than eight weeks before the day of sale. No tax list or warrant to the tax collector, no record of the county conventions, and no warrant of the county or state treasurer for either of the years were in evidence, but for each year there was produced the record of the collector's sworn return of his non-resident sales, setting forth that pursuant to a warrant signed by the selectmen, with a tax list annexed, he had notified the non-resident proprietors and owners of land in said town who had not paid their taxes of the sale. " The New Hampshire Patriot" of October 5, 1853, contained an advertisement of the lots for sale for the unpaid taxes of that year. The sales of 1850, 1851, and 1852 were advertised to commence at 10 o'clock A. M., but did not in fact begin until from ten to fifty minutes later. It appeared by the town records that in each of the four years the selectmen took an invoice of the ratable estates of non-residents, including the two lots, assessed the taxes thereon, and delivered a list thereof to the collector in April or May, except that the date of delivery in the year 1853 did not appear. It did not appear that the plaintiffs or their grantors had ever been in possession of the lots.

Before 1881, the lots were quitclaimed to the defendants by parties who, so far as appeared, never had title to or possession of them. They were taxed in 1881, 1882, and 1883 to the defendants, who paid the taxes. In 1884 they were taxed as non-resident, " name of owner unknown," and sold for the taxes to C, who received a deed from the collector and in 1886 conveyed

his title to the defendants. The defendants were not in possession of the lots when they were taxed in 1884. All the proceedings relating to this tax sale were regular, except that when the tax was assessed the selectmen " knew, or could have known by the exercise of reasonable diligence, that the defendants claimed to own" the lots, and the referee therefore found that the lots should have been assessed in the name of the defendants as owners. In 1886, the lots were properly assessed and sold for the taxes to one of the defendants. No notice of the sale was given to the plaintiffs who, if any of the tax sales from 1850 to 1853 were valid, then held a valid and duly recorded mortgage of the lots.

Each party moved for judgment.

*Daniel C. Remich* and *Elisha C. Mowry* (of Rhode Island), for the plaintiffs.

*George H. Bingham, James W. Remick, Drew, Jordan & Buckley,* and *Burleigh & Adams,* for the defendants.

CARPENTER, C. J. " Unimproved lands of non-residents shall be taxed in the name of the owner, if known; otherwise, in the name of the original proprietor, if known; otherwise, without any name, and by the number of lot and range, and the quantity thereof, if lotted, or by such other description as it may be readily known by." G. L., c. 54, s. 21; P. S., c. 56, s. 25. The only defect alleged or suggested in the defendants' title, under the sale of the lots to their grantor for the taxes of 1884, is that the taxes were not assessed in the name of the owner. Assuming that the plaintiffs were at the date of the assessment the owners of the lots, it must be presumed, in the absence of a finding to the contrary, that their ownership was unknown. *Cardigan* v. *Page,* 6 N. H. 182; *Smith* v. *Messer,* 17 N. H. 420, 427. The defendants were not the owners. An assessment of the taxes in their name would have been erroneous and a fatal defect. *Thompson* v. *Ela,* 60 N. H. 562. The finding of the referee that the lands should have been assessed in the name of the defendants, is not a finding of fact, but a conclusion of law. All that the selectmen either knew, or by reasonable diligence could have learned, was that the defendants claimed to own the lots. The statute requires the lands to be assessed not in the name of a claimant, if known, but in the name of the owner, if known. The mere fact that one not in possession claims the land does not require the assessment to be made in his name. *French* v. *Spalding,* 61 N. H. 395, 402. Whether a claimant in possession without title is an owner within the meaning of the statute, need not be considered because the defendants were not

in possession. Upon the facts stated the assessment was properly made; and the defendants' title under the sale, in the absence of any other objection, is good. This conclusion makes it unnecessary to consider whether the plaintiffs' title under the sales for taxes for the years 1850–1853 was or was not valid, or any other question raised by the case.

*Judgment for the defendants.*

All concurred.