THE FAIRMOUNT LAND CORPORATION vs. MAYOR AND CITY COUNCIL OF BALTIMORE.

*Condemnation Proceedings—Review in Equity—Abandonment—Sale for Assessments—Limitations—Injunction.*

Where the Commissioners for Opening Streets of Baltimore City have proceeded within their jurisdiction under a valid ordinance, objections to their proceedings, which could have been made on appeal to the Baltimore City Court, cannot be asserted as a ground for review in a court of equity.        p. 400

A bill by a property owner against the Mayor and City Council of Baltimore, alleging that the corrected return of the Commissioners for Opening Streets under an ordinance providing for the opening of Gwynn's Falls Parkway was not transferred to the City Collector until a named date, which was about five years after the determination of the last of certain appeals by property owners in connection with the opening of the parkway, and about two years before the filing of the bill, *held* not to show an abandonment of the proceeding to open the parkway.                        pp. 400, 401

So far as the bill disclosed, the commissioners might be still proceeding under certain subsequent ordinances which provided for a partial relocation of the proposed parkway, though even if the return of the commissioners under all the ordinances were completed at the date named, this would not of itself be sufficient to establish an abandonment of the parkway, or estop the city from further proceeding under said ordinances.    p. 401

Section 843 of the Charter of Baltimore City, which provides that all "taxes" shall be collected within four years, does not apply to benefits assessed in connection with the opening of streets.                        p. 401

The summary mode of collecting assessments by the sale of the property is a special power, and must be exercised in the

mode and manner, and under the limitations, prescribed, and in no other way, and this applies to city charter requirements that the City Collector, upon the transfer to him of the return of the Commissioners for Opening Streets, shall "forthwith" warn property owners that, if the assessments are not paid within two months, the property will be sold, and that the notice. of sale shall be published "promptly" after the expiration of the time fixed for payment.                pp. 402, 403

The right to apply for an injunction to restrain a sale is not lost because a property holder waits until after the time limited for an appeal has passed, and until notice has been given that his property is about to be seized and sold, a bill in equity being premature before that time, because of lack of imminence of damage.                                    p. 404

Where the city, by reason of its failure to exercise the summary power of sale for non-payment of assessments in accordance with the provisions of the charter, has lost that power, it must resort to an action at law for the recovery of benefits, and a lot owner is entitled to an injunction to restrain a threatened sale.                                    pp. 404, 405

*Decided April 9th, 1924.*

Appeal from the Circuit Court of Baltimore City (GOR-TER, C. J.).

Bill by the Fairmount Land Corporation against the Mayor and City Council of Baltimore. From a decree for defendant, plaintiff appeals. Reversed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*William H. Maltbie,* for the appellant.

*Frank Driscoll, Assistant City Solicitor,* with whom was *Philip B. Perlman, City Solicitor,* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from the decree of the court below sustaining a demurrer to and dismissing the bill of complaint of the Fairmount Land Corporation against the Mayor and City Council of Baltimore.

The bill alleges that the plaintiff was incorporated for the purpose of developing a tract of land in the City of Baltimore lying south of Clifton Avenue and Gwynn's Falls Park and known as Fairmount; that said tract had a frontage of over three hundred feet on said park, and that the plaintiff consulted with the "Topographical Survey Commission" of the city and at great cost to itself secured the services of eminent landscape architects in order that the development of said tract might not detract from the beauty of said park, and from time to time filed with said commission plans of its development; that said commission approved of the "layout" of the streets shown on said plans, and the water board of the city from time to time laid pipes in said streets; that the plaintiff induced the Consolidated Gas Electric Light and Power Company of Baltimore to lay gas pipes in the bed of said streets, proceeded to grade and pave the same, and to provide for a drainage and sewerage system; that on the 28th of February, 1910, the plaintiff deeded to the city the beds of parts of Chelsea Road, Chestnut Road, and Cedar Road, and the deed therefor was accompanied by a plat showing said roads and the remaining roads and streets then in process of development; that on the 5th of December, 1910, the plaintiff sold a lot in Fairmount to Mary T. Lawton, and caused to be recorded with the deed for said lot a plat of said tract showing the subdivision of the property into streets and building lots; that from time to time, prior to the 1st of July, 1913, the plaintiff conveyed certain other lots in Fairmount to various purchasers by deeds recorded among the Land Records of Baltimore City; that on the 1st of April, 1911, the plaintiff and Mary T. Lawton conveyed to the city an easement for a water pipe in the bed of North Road, and on the 20th of November,

1911, the plaintiff conveyed to the city the bed of North Road from Gwynn's Falls Park to Cedar Road; that the defendant, by Ordinance No. 678, approved April 25th, 1911, authorized and directed the Commissioners for Opening Streets to condemn and open a street known as Gwynn's Falls Parkway in accordance with the courses and distances set out in said ordinance; that at the time of the passage of said ordinance the city had approved of the layout of the streets in Fairmount, had received, through the plat filed with the Topographical Survey Commission, through the deed to Mary T. Lawton and the plat filed therewith, and through said deed from the plaintiff and Mary T. Lawton to the city, notice of the location of said streets and of the subdivision of Fairmount into building lots; that said Gwynn's Falls Parkway as proposed to be opened was a broad avenue or boulevard from Druid Hill Park to Gwynn's Falls Park, and if completed as planned would have been of great benefit and value to the plaintiff in the development of Fairmount; that on the 18th of August, 1913, the Commissioners for Opening Streets caused to be inserted in the "Baltimore American" and the "German Correspondent," two newspapers, an advertisement giving notice that they "had caused to be made out a detailed statement of all damages awarded, expenses incurred, and benefits assessed, together with an explanatory map thereof, in connection with the condemnation and opening of said Gwynn's Falls Parkway under said ordinance of April 25th, 1911"; that included in the property to be condemned were two parcels of land belonging to the plaintiff and designated on said map as "L6 and N6," which were fully and properly located on the map (except that lot N6 included a small area which did not belong to the plaintiff), and the plaintiff was awarded as damages for said land the sum of $1,256; that there were also two lots on said map, lot No. 265 and lot No. 267, "together with the name of the" plaintiff, "but that the limits or boundaries of said lots were not shown on said plat"; that said descriptions do not contain a description of each

separate lot deemed to be benefited, with its dimensions, the
name of the street on which it bounds and the name or
names of such person or persons as may be supposed to have
any estate or interest therein, as required by section 177 of
the charter of the city, and that the one dimension given
for the second of said lots extends beyond the property
owned by the plaintiff into the property theretofore deeded
by the plaintiff to the city; that the Commissioners for Open-
ing Streets entirely ignored as lot boundaries the roads
acquired by the city by the deed of 1910, the subdivision of
the plaintiff's tract into lots, the sale of one of said lots to
Mary T. Lawton, the deed from her and the plaintiff to the
city, and the sale of other lots in Fairmount, and that
through the failure of said commissioners to determine the
dimensions of said lots Nos. 265 and 267 by the said plat
and descriptions, and their failure to recognize on said plat
the existence of North Road, Cedar Road, Chestnut Road,
and Chelsea Road, the subdivision of said tract into lots,
and the sales of lots recorded, it has been impossible for
either the plaintiff or the defendant to determine what land
or lands are subject to the lien of said assessments, or how
the same, if valid, shall be apportioned between the land
of the plaintiff and the land conveyed by it to the defendant
and other persons before the lien of said assessments
attached; that the corrected return of the Commissioners for
Opening Streets in connection with Gwynn's Falls Parkway
under the ordinance of 1911 was made on the 22nd of
January, 1914, and notice thereof was published by the
City Register on the 23rd of January, 1914, and that there-
upon certain appeals were filed in the Baltimore City Court;
that the last of said appeals was finally determined on the
28th of November, 1916, and that the return of the Com-
missioners for Opening Streets was not transferred to the
City Collector within ten days from the determination of
the last of said appeals "as required by Article 181 of the
City Code," and that said return was not transferred to the
City Collector until the 16th of June, 1921; that the City

Collector "did not forthwith notify the plaintiff by bills specifying the several sums so assessed upon lots Nos. 265 and 267, warning it that if the same be not paid within three months from the date of said transfer of said commissioners' return he would proceed to sell the specific pieces or parts of property on which said unpaid sum or sums of money shall have been assessed as required by law, but that the bills rendered by said City Collector to the plaintiff set the limit for payment at November 8th, 1921, * * * and that said City Collector did not proceed to sell the property or to give thirty days' notice of said sale by publication of the first insertion of said notice within sixty days after the expiration of the time limited, to wit, three months, as required by law, and has not yet given such notice or made such sale, and that no tender of the damages awarded to the plaintiff on said lots L6 and N6 was or has been made by the defendant"; that in order to secure a settlement of the appeal of Alexander Brown from the damages awarded and benefits assessed under Ordinance No. 678 the city entered into a contract with him, and that in furtherance of the agreement with him two new ordinances, Ordinances Nos. 169 and 170, approved July 14th, 1916, were passed by the city, and that under Ordinance No. 678 and the said new ordinances the city had opened and improved Gwynn's Falls Parkway for a short distance between Dennison Street and Clifton Avenue; that said parkway, instead of being a broad boulevard from Druid Hill Park to Gwynn's Falls Park, and of great benefit to the plaintiff, is a short street from undeveloped land on the east to private grounds on the west, and of no benefit and in no way related to the land of the plaintiff; that the property of the plaintiff would have been greatly benefited by the completion of the parkway in accordance with Ordinance No. 678, and that the plaintiff would have gladly paid said assessments if it had been assured of the completion of the parkway within a reasonable time, but that as its completion as originally contemplated became uncertain, the plaintiff was unwilling to pay

the benefits assessed upon said lots Nos. 265 and 267, but has from time to time sold lots in Fairmount with the understanding that they should be "subject to their proper apportionment of said benefits"; that the plaintiff has attempted by negotiations with the city to have the benefits assessed apportioned between the lots into which the plaintiff had subdivided its property, but was informed that the city had no authority to make the apportionment, and that the plaintiff is therefore unable to determine how much of said assessments should be attached to the property still owned by it; that the "Bureau of Liens" has arbitrarily and without authority of law determined "the boundaries within which the liens of the assessments for benefits shall operate," and is reporting "the full amounts of said respective assessments as liens upon individual lots," and that the plaintiff is therefore unable to give satisfactory title to would-be purchasers of lots in Fairmount, and is greatly hampered in the development of its said tract; that relying upon the completion of the parkway in compliance with the final return of the commissioners, the plaintiff replatted so much of its land as was in the vicinity of the proposed parkway, excluding therefrom the land covered by said lots L6 and N6, and has held such lands as "dead lands, producing no income," and has for eight years been deprived of the use and benefits of said land without compensation; that since 1913, when $1,256 was awarded as damages for the taking of said lands, there has been a marked increase in the value of real estate in Baltimore City, and that said sum is not the fair value of said lands at the present time; that the defendant, through the City Collector, is about to advertise the property of the plaintiff and of its grantees "for sale for the satisfaction of the lien of said assessment of benefits, and that said advertisement and sale, if consummated, will work irreparable injury to" the plaintiff.

The prayer of the bill was for a decree declaring (1) .that "all the rights" of the defendant to sell the lands of the plaintiff have been forfeited by the failure of the defendant

to proceed in accordance with the statutory requirements for such sale; (2) that the right of the defendant to collect said assessments of benefits is barred by the statute of limitations provided for the collection of taxes in Baltimore City; (3) "that the plans of the defendant for the unfinished portions of Gwynn's Falls Parkway have been abandoned by the defendant through its failure to act within a reasonable time, and that the award of damages and assessment of benefits to the plaintiff are no longer in force," and (4) that the assessment of benefits in said lots Nos. 265 and 267 are void because not made in accordance with the statute. The bill also prayed that the defendant be enjoined from setting up or attempting to set up any claim to said lots L6 and N6 under the proceedings of the Commissioners for Opening Streets under Ordinance No. 678; from asserting the existence of any lien upon all or any portion of the tract known as Fairmount growing out of the said assessment of benefits under said ordinance, and from selling, attempting to sell, or advertising for sale the said property of the plaintiff for the satisfaction of said lien, and the collection of said assessments from the plaintiff or its grantees, and for general relief.

The grounds of the defendant's demurrer were (1) "that after the assessments complained of were made the plaintiff had a right to appeal to the Baltimore City Court where all questions relating to the plaintiff's liability for said assessments could have been determined, and that having failed to take an appeal, that plaintiff is barred from litigating its liability for said assessments" in a court of equity; (2) "that the allegations of the bill * * * do not entitle the plaintiff to any relief in equity against the defendant, and that the bill is defective for want of equity on its face," and (3) "that the plaintiff has a full, complete and adequate remedy at law."

This is the third appeal to this Court in reference to the proceedings for the opening of Gwynn's Falls Parkway. *Timanus* v. *Baltimore,* 128 Md. 105; *Bouis* v. *Baltimore,*

138 Md. 284.  In *Timanus'* case the appeal was from an order of the Baltimore City Court dismissing the appeal to that court on the ground that it was not taken within the time prescribed by section 179 of the Charter of Baltimore City (Act of 1912, ch. 32).  In that case we quoted from the decision in *Baltimore* v. *Johnson,* 123 Md. 320, where it was said: "In cases like the one before us section 179 of the Local Laws of Baltimore City (sec. 10, art. 48 of the Baltimore City Code of 1893) provides for an appeal by 'any person or persons or corporation who may be dissatisfied with the assessment of damages or benefits etc.' by petition in writing to the Baltimore City Court, and the court is given 'full power to hear and fully examine the subject and decide upon said appeal.'  The appellant had the right to have her appeal heard by the Baltimore City Court, to which she appealed, and it was within the jurisdiction of that court to hear and determine all questions connected with those proceedings in which she was interested (*Baltimore* v. *Coates,* 85 Md. 535), including the question here presented, that is, whether or not the grade of the street opened through the lands of the appellee should be first established by the city before it be permitted to assess the appellee with benefits to her adjacent lands, caused by the opening of said street; and from the action of the court in ruling upon this question a further appeal will lie to this Court.  The appellee had her adequate remedy in the Baltimore City Court, or in this Court on appeal from its action, and thus the equity court was without jurisdiction to grant the relief sought."  And in *Timanus'* case we said: "*Johnson's* case was followed by the later case of *Patterson* v. *Baltimore City,* 124 Md. 153. The Baltimore City Court on appeal could have reviewed the action and proceedings of the Commissioners complained of, and in order to secure that review it was incumbent upon the appellant to take his appeal within the time allowed. *Hopper* v. *Jones,* 64 Md. 578."  In *Bouis'* case, where the appeal was from a decree sustaining the demurrer to and dismissing the bill of complaint of the appellant, we held

that all three of the ordinances referred to in this case were valid, and in affirming the decree of the lower court said: "The appellant not only had the opportunity to appeal to the Baltimore City Court, and, if not satisfied with its rulings, to this Court, in reference to Ordinance No. 678, but he could have appealed from the action of the Commissioners under the other two ordinances, where he could probably have made all objections which could have been of any possible avail." And in that case we said further: "While the proceedings have been pending a long time, the record will not justify us in saying that the city was guilty of such laches as is referred to in *Wagner* v. *Bealmear & Son Co.,* 135 Md. 690, or similar cases."

In the present case we have set out the averments of the bill at some length for the purpose of showing that all of the objections here made to the proceedings of the Commissioners for Opening Streets could have been made on an appeal to the Baltimore City Court. Where that is the case and the Commissioners have proceeded within their jurisdiction under a valid ordinance, a court of equity, under the repeated decisions of this Court, cannot review their action. In addition to the cases referred to, see *Hazlehurst* v. *Baltimore,* 37 Md. 199, and *Wannenwetsch* v. *Baltimore,* 111 Md. 32, and *Ritchie on Munic. Condem.,* secs. 189-193.

As said in *Bouis'* case, the facts alleged in the bill are not sufficient to justify us in holding that the proceedings for opening the parkway have been abandoned by the city. Section 181 of the City Charter (ed. 1915) provides that: "If no appeal shall have been prayed, then, within ten days after the time hereinbefore limited therefor, or after the return of the decision upon any appeal shall have been made to said Commissioners, their return shall be transferred to the City Collector" etc., and the bill alleges that "the corrected return of the Commissioners * * * in connection with the opening of said Gwynn's Falls Parkway under the ordinance aforesaid" was transferred to the City Collector on the 16th of June, 1921. But the bill does not allege that the return of

the Commissioners referred to included their return under Ordinances Nos. 169 and 170, which were passed for the purpose of closing a part of the parkway as proposed by Ordinance No. 678 and relocating it (*Bouis* v. *Baltimore, supra*), and so far as the bill discloses, the Commissioners may be still proceeding under those ordinances, and, if so, it would negative the idea that the city had *abandoned* the parkway. *Norris* v. *Baltimore,* 44 Md. 598; *Wagner* v. *Bealmear & Son Co., supra.* But we are not to be understood as intimating that if the return of the Commissioners under the three ordinances mentioned were completed in June, 1921, that that, of itself, would be sufficient to establish an abandonment of the parkway, or to estop the city from further proceeding under said ordinances. If the appellant has suffered any loss by reason of unnecessary or unjustifiable delay on the part of the city, he is not without a remedy. *Norris* v. *Baltimore, supra.*

Nor can the appellant invoke section 843 of the City Charter (ed. 1915; Act of 1898, ch. 123) as a bar to the collection of the benefits assessed upon lots Nos. 265 and 267. This section, which provides that all taxes levied in the City of Baltimore shall be collected within four years from the levying of the same, etc., has been held not to apply to such assessments. In *Gould* v. *Baltimore,* 59 Md. 378, where the question was raised, the court said: "It has been uniformly held that the word taxes, whether used in the Act of the Legislature, or the charter of a company exempting it from taxation, does not embrace such local assessments, unless there is something in the statute or charter to indicate such an intention. * * * We are of opinion, therefore, that the claim of the appellee is not barred by the statute." See also *Gould* v. *Baltimore,* 58 Md. 46, and *Ritchie on Munic. Condem.,* sec. 158.

For the reasons stated we hold that the averments of the bill do not entitle the appellant to a decree declaring that the proceedings of the Commissioners for Opening Streets, and the assessment of benefits on lots Nos. 265 and 267, are

void, or that the city has abandoned said parkway, or that the collection of said assessments is barred by the statute of limitations referred to.

But the bill alleges, and the demurrer admits, that the return of the commissioners was transferred to the City Collector on the 16th of June, 1921; that the City Collector did not forthwith notify the plaintiff of the sums assessed upon lots Nos. 265 and 267 and warn it that if the same were not paid *within three months* from the date of said transfer of the commissioners' return, he would proceed to sell the property on which the sums were assessed; that the collector did not proceed to sell said property or to give thirty days' notice of said sale by publication of the first insertion of said notice within sixty days after the time limited, "and has not yet given such notice or made such sale"; that notwithstanding the omissions of the collector, he is about to advertise the property of the plaintiff and of its grantees for sale for the satisfaction of said assessments of benefits, and the bill prays that the defendant may be enjoined from selling or attempting to sell said property of the plaintiff for the satisfaction of said assessments. The appellant refers to sections 181 and 182 as they appear in the City Code of 1906, because the act of 1912, which amended those sections, provided that pending proceedings should not be affected thereby, but should continue in the same manner and to the same effect as if the provisions of the law had remained as they were prior to the passage of the act of 1912. Section 181 was, however, further amended by the act of 1914, chapter 494, without such a clause in regard to pending proceedings. Section 181, as it now appears in the 1915 edition of the City Charter, provides that when the return of the commissioners has been transferred to the City Collector, he shall "proceed forthwith to notify the parties assessed for benefits by means of bills specifying the several sums so assessed and the installments due and payable, and warning them that if the same are not paid within two months (instead of three months as provided in

the Code of 1906) from the date of such transfer of said commissioners' return, he will proceed to sell the specific pieces or parts of property on which said unpaid sum or sums of money shall have been assessed, "in the manner and after having given the notice directed by this article," and section 182 provides that "if the sums assessed upon the property specified shall not be paid within the time above limited, the City Collector is hereby directed to sell the property, or any part thereof, on which such assessment has been laid, giving thirty days' notice of said sale in two of the daily newspapers published in the City of Baltimore, the first insertion of said notice to be made in said newspapers promptly (instead of sixty days, as provided in the Code of 1906) after the expiration of the time limited in this article for the payment of said benefits." Whether we treat section 182 of the Code of 1906 or the amendment of that section by the act of 1912 (City Charter, ed. 1915) as applicable to the proceedings for the opening of Gwynn's Falls Parkway, it is apparent, from the averments of the bill, that the City Collector did not proceed with the collection of the assessment in question in accordance with its provisions. In *Ritchie on Munic. Condem.,* sec. 157, the author says: "The summary mode of collecting assessments by the sale of the property is a special power, and must be exercised in the mode and manner, and under the limitations prescribed, and in no other way," and in the case of *State ex rel. Henderson* v. *Taylor,* 59 Md. 338, JUDGE ALVEY, referring to similar provisions in the Code of Baltimore City, said: "It will be observed that the summary mode of collection of the assessments by sale of the property assessed is prescribed with particularity; and, as it is a special power, dependent for its existence and validity upon the terms of the ordinance passed in pursuance of authority delegated to the city, it must be exercised in the mode and manner, and under the limitations prescribed in the ordinance, and in no other way. If, therefore, the time has passed, or there are any other conditions that cannot now

be complied with, the summary power of sale no longer exists. * * * In such a case, the city would have to resort to the ordinary remedy by actions at law for the recovery of the assessments."

It is urged on behalf of the city that the plaintiff has been guilty of laches and is not, therefore, entitled to relief in equity. But it is said in *Ritchie on Munic. Condem.*, sec. 195, that "the right to apply for an injunction is not lost because a property holder waits until after the time limited for an appeal has passed, and until notice has been given that his property is about to be seized and sold. Before that time a bill in equity would be premature, because no damage would be imminent," and the text is fully supported by the case of *Baltimore* v. *Grand Lodge I. O. O. F.*, 44 Md. 436. The case of *Baltimore* v. *Williams*, 129 Md. 290, relied on by the appellee, had to do with a totally different state of facts. There the bill was filed by certain taxpayers to enjoin the Mayor and City Council from any further expenditure of a loan for the purpose of opening and widening St. Paul Street, and to require the Mayor and City Council to restore to the Harbor Improvement Fund the amount that had already been expended for that purpose. The act had been passed in 1910, and the ordinance authorizing the loan was approved in October, 1914, and the bill was not filed until a year after final action had been had by the Mayor and City Council, and until after $260,000 had been actually spent upon the proposed widening. No explanation having been given for such delay, the court cited several cases tending to sustain the contention of the appellant that the appellee had been guilty of laches, but the decree of the lower court was reversed on other grounds. In the present case the application is for an injunction restraining a threatened and unauthorized sale of the plaintiff's property.

It follows from what has been said that, under the averments of the bill and the admissions of the demurrer, the city, by reason of its failure to exercise the summary power

of sale contained in section 182 of its charter in accordance
with the provisions of that section, has lost that power, and
must resort to an action at law for the recovery of the benefits
upon lots Nos. 265 and 267, and that the appellant was
entitled to an injunction restraining the threatened sale of
said lots for the purpose of collecting said assessments. The
decree of the court below, sustaining the demurrer to and
dismissing the plaintiff's bill, must be reversed, and cause
remanded in order that the defendant may answer the bill.

*Decree reversed, with costs, and cause remanded.*