MAYOR & CITY COUNCIL OF BALTIMORE *v.* ISIDORE HETTLEMAN, ET AL.

[No. 2, April Term, 1944.]

*Decided May 3, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Lester H. Crowther, Assistant City, Solicitor,* and *Morris A. Baker, Deputy City Solicitor,* with whom was *Simon E. Sobeloff, City Solicitor,* on the brief, for appellant.

*Raphael Walter,* with whom was *Nyberg, Goldman & Walter,* on the brief, for appellees.

GRASON, J., delivered the opinion of the Court.

On May 14, 1926, Ordinance No. 664 was passed by the Mayor and City Council of Baltimore. At that time Russell Street, from Stockholm Street to Maryland Avenue, was sixty-six feet wide. This ordinance provided for the widening of Russell Street, on the west side thereof, thirty-four feet, from Stockholm Street to Maryland Avenue, in Westport, an approximate distance of 6000 feet, making Russell Street, between these two streets, one hundred feet wide. The Commissioners for Opening Streets proceeded under this ordinance, prepared a plat showing the properties affected, awarded compensation to property holders for damages resulting from the taking of their property for that purpose, and assessed benefits to properties that would be benefitted by the widening of Russell Street.

The appellees' property shown on the plat prepared by the Commissioners is Lot No. 109 and the benefits resulting to this lot by the widening of Russell Street were assessed by the Commissioners to be $220. This lot is located on Warner Street, between Alluvian Street on the north and Wooster Street on the south, as shown by the plat exhibited, and Warner Street is one block east of Russell Street. From the intersection of Alluvian and Russell Streets to Stockholm Street is a distance of 270.76 feet. The proceedings by the Commissioners were finally completed and a certification of the same duly made on the 9th day of October, 1930. Russell Street was widened under this ordinance from 66 feet to 100 feet, from Maryland Avenue to Bush Street, a distance of approximately 3580 feet, and from Bush Street to

Stockholm Street, a distance of 1700 feet, it has not been widened. It thus appears that for nearly one-third of the distance within which Russell Street was to be widened under this ordinance Russell Street remains only 66 feet wide, or the same width it was before the passage of the ordinance. It appears that for twelve years before the filing of the Amended Bill of Complaint in this case (now going on fourteen years) no part of Russell Street from Stockholm Street to Bush Street has been physically widened as provided in this ordinance.

On July 29, 1930, the Mayor and City Council passed Ordinance No. 1123. The title to this ordinance is as follows:

"An ordinance to condemn and close in two parts, 34 feet of Russell Street as condemned and opened under Ordinance No. 664, approved May 14, 1926, along the northwest side thereof, from Bayard Street southwesterly 210 feet, in accordance with a plat thereof filed in the Office of the Commissioners for Opening Streets on the twenty-eighth (28th) day of May, 1930, and now on file in said Office."

Section two of this ordinance provides:

"That when said highway shall be closed under the provisions of this Ordinance, all subsurface structures and appurtenances now owned by the Mayor and City Council of Baltimore, shall be and continue to be the property of the Mayor and City Council of Baltimore in fee simple, and in the event that any person, firm or corporation shall desire to remove, alter or interfere therewith, such person, firm or corporation shall first obtain permission and permits therefor from the Mayor and City Council of Baltimore, and shall in the application for such permission and permits agree to pay all costs and charges of every kind and nature made necessary by such removal, alteration or interference."

Section three of said ordinance provides:

"That no structure or structures of any kind shall be constructed or erected in said portion of said highway

after the same shall have been closed until the subsurface structures and appurtenances shall have been removed and relaid in accordance with the specifications and under the direction of the Highways Engineer of Baltimore City and at the expense of the person or persons or body corporate desiring to erect such structure or structures."

On October 20, 1932, the Mayor and City Council of Baltimore passed Ordinance No. 291. The title to this ordinance is:

"An ordinance to condemn and close a portion, 34 feet wide, of Russell Street as condemned and opened under ordinance No. 664, approved May 14, 1926, along the northwest side thereof from Alluvian Street northeasterly 270.76 feet, in accordance with a plat thereof filed in the Office of the Commissioners for Opening Streets, on the Twenty-fourth (24th) day of September, 1931, and now on file in said office."

Sections two and three of this ordinance are the same as sections two and three of Ordinance No. 1123.

In the Amended Bill of Complaint all of the facts above stated are averred and in addition thereto it is charged that by reason of the closing of Russell Street by the ordinances mentioned, from Stockholm Street to Bush Street, Russell Street cannot be widened as provided in Ordinance No. 664 unless and until ordinances are passed opening and widening Russell Street to the extent that the same was closed under the above ordinances; that no ordinances have been passed or are pending for the opening and widening of these portions of Russell Street which were closed by the ordinances above named. It is further charged that no appropriations have been made by the City and no appropriations are pending to defray the costs of the physical widening of Russell Street from Stockholm Street to Bush Street, as provided in Ordinance No. 664. It is further charged that Russell Street, from Bush Street to Maryland Avenue, has been physically widened as provided in Ordinance No. 664 and that such physical widening has re-

sulted in no benefit whatsoever to the property of the complainants; that the abandonment of the widening of Russell Street from Stockholm Street to Bush Street has deprived the property of the complainants of all benefits which would have inured to it had Russell Street been physically widened as provided for in Ordinance No. 664. It is charged, notwithstanding the property of the complainants has derived no benefits from the partial widening of Russell Street, the City has asserted said assessments for benefits is a valid lien against the property of the plaintiffs and bears interest from December 27, 1930; that the City has, from time to time, threatened to enforce said lien by the sale of said property. It is averred the lien so asserted constitutes a cloud on the title of the complainants' property and the complainants have no adequate remedy at law. The Amended Bill prays:

1. That defendant may be declared to have abandoned the widening of Russell Street from Stockholm Street to Bush Street, as contemplated under the provisions of said Ordinance No. 664.

2. That the assessment of benefits against the property of your complainants arising out of the proposed widening of Russell Street as provided under the provisions of Ordinance No. 664 and the lien thereof against said property, may be declared null and void and of no effect. And

3. A prayer for general relief.

To this Bill the City demurred, which the Court overruled and the appellant appealed therefrom. Two questions are raised by the appellant in its brief: 1. Does the Amended Bill of Complaint allege facts sufficient to prove abandonment of the widening of Russell Street from Stockholm Street to Bush Street. And 2. Have appellees an adequate remedy at law.

Many assertions of fact, not contained in the Amended Bill, have been made in the appellant's brief, which cannot be considered by this Court in passing upon its legal sufficiency, which is raised by the defendant's de-

murrer. The Amended Bill must stand or fall by the facts well pleaded therein, and such facts, for the purpose of the demurrer, are admitted. It is only such facts, so admitted, that will be considered here. It is contended by the appellant that the passage of Ordinances Nos. 1123 and 291, instead of constituting evidence of abandonment, is direct evidence that the widening of Russell Street as contemplated by Ordinance No. 664 has not been abandoned; and, if the City had intended an abandonment, it would have passed only one ordinance to effectuate its closing. And it is asserted it is not certain the closing ordinances will be executed as nothing has been done following their passage in 1930 and in 1932 respectively, and that special conditions existed affecting the matter. What special conditions, if any, these closing ordinances were passed to meet, we are not concerned with here. Such conditions might be relevant in determining an intention to abandon, but we are only determining the legal sufficiency of the facts averred in the amended bill, and we cannot import into the bill that the passage of the ordinances was for the purpose of meeting special conditions. Neither do we think that the passage of these closing ordinances is direct evidence that the widening of Russell Street had not been abandoned. Sections two of these ordinances contemplated the removal, or at least provided for the removal, of "all sub-surface structures and appurtenances" owned by the City and "in the event that any person, firm or corporation shall desire to remove, alter or interfere therewith * * * shall first obtain permission and permits therefor from the Mayor and City Council" and shall in the application "agree to pay all costs and charges of every kind and nature made necessary by such removal, alteration or interference". Sections three of these ordinances provide: "that no structure or structures of any kind shall be constructed or erected in said portion of said highway after the same shall have been closed until the sub-surface structures and appurtenances shall have been removed and relaid

in accordance with the specifications and under the direction of the Highways Engineer of Baltimore City and at the expense of the person or persons or body corporate desiring to erect such structure or structures". It is perfectly patent from sections two and three of these closing ordinances that the City contemplated the disposal of the property in the ordinances mentioned, and provided for the removal of sub-surface structures and contemplated the erection of buildings on the land which it had acquired, in the event that the same was sold and the sub-surface structures removed therefrom. In our opinion these sections evidence an intention on the part of the City to abandon the widening of Russell Street at its northernmost end, for a distance of 270 feet north of Alluvian Street, and to abandon the widening of Russell Street from Bayard Street southerly for a distance of 210 feet.

It can hardly be supposed that the City intended to widen Russell Street from Alluvian Street to Bayard Street to 100 feet, and leave Russell Street 66 feet wide for a distance of 210 feet to the south of Bayard Street and 66 feet wide for a distance of 270 feet north of Alluvian Street. On the contrary we are of opinion that these closing ordinances and their effect on the widening of Russell Street it may be inferred that the City intended to abandon the widening of Russell Street from Bush Street northerly to Stockholm Street.

In support of its position on the question of abandonment, the appellant relies chiefly upon the case of *Fairmount Land Corporation v. Mayor and City Council of Baltimore,* 145 Md. 391, 125 A. 796. That case grew out of the opening of Gwynn's Falls Parkway by the City of Baltimore. The parkway runs from Druid Hill Park to Gwynn's Falls Park. Three ordinances were passed by the City, one, No. 678, authorized the City to construct the parkway, and was passed the 25th day of April, 1911. Ordinance No. 169, passed July 14, 1916, was "an ordinance to condemn and close several portions of Gwynn's Falls Parkway as now in process of opening". Ordinance

No. 170 was an ordinance to "condemn, open and relocate Gwynn's Falls Parkway" and was passed the same day as Ordinance 169. In its opinion the Court said: "Ordinances Nos. 169 and 170, which were passed for the purpose of closing a part of the parkway as proposed by Ordinance No. 678 and relocating it, and so far as the bill discloses, the Commissioners may be still proceeding under those ordinances, and, if so, it would negative the idea that the City had abandoned the parkway". We agree with that statement as it would seem to be perfectly clear if the City on the same day passed two ordinances, one, to close a part of Gwynn's Falls Parkway which was then under construction, and the other, to condemn, open and relocate Gwynn's Falls Parkway, it could not be said under such facts that the City intended to abandon the parkway. In this case there was no question of relocation. Both ordinances here involved were passed to condemn and close certain parts of Russell Street as condemned and opened under Ordinance No. 664.

"Abandonment in law depends upon the concurrence of two, and only two, factors; one an intention to abandon or relinquish; and two, some overt act, or some failure to act, which carries the implication that the owner neither claims nor retains any interest in the subject-matter of the abandonment. 1 C. J. S., *Abandonment*, 8. Time is 'not an essential element' of abandonment, although the lapse of time may be evidence of an intention to abandon, *Id.*, 9, 16, and where it is accompanied by acts manifesting such an intention it may be considered in determining whether there has been an abandonment."..*Landay v. Board of Zoning Appeals*, 173 Md. 460, 469, 196 A. 293, 297; 114 A. L. R. 984; *Beyer v. Mayor & City Council of Baltimore City*, 182 Md. 444, 34 A. 2d 768.

In *Canton Co. v. Baltimore & O. R. Co.*, 99 Md. 202, 57 A. 637, 638, it is said:

"Here the condemnation was 'for the use and occupation in perpetuity by said company of said parcel of land

for its Philadelphia Branch Railroad,' and the damages of $20,000 assessed, and paid by the appellee, were assessed for that purpose, and no other. To deprive it now of the possession of the land for that purpose, there must be shown that it has lost its right, either by reason of the fact that, such use having become impossible (which is not contended), or by some act, or the omission of some act, it was bound to perform, the appellee must legally be regarded as having abandoned it."

. It was further said in that case:

"It has accordingly been frequently held that, while nonuser is strong evidence tending to show abandonment, yet it will not *per se* operate as abandonment, unless there is some decided and unequivocal act of the owner inconsistent with the continued existence of the easement, or unless the nonuser has been for a considerable period, without a valid reason or excuse for its neglect."

. Further quoting from that case it is said:

. "The question as to whether there has been an abandonment, or not, is usually one of fact, to be determined by the circumstances in each case."

... "The cases, however, do hold that an abandonment of a right of way condemned for public use may be brought about in one of two ways; an explicit renunciation of the purpose to give effect to the condemnation, which in the case of a municipality would be by a repeal of the ordinance under which the proceedings were instituted, or such an abandonment may be deduced from acts *in pais,* and whether those acts constitute sufficient evidence of an intention on the part of the condemning corporation to abandon the proceeding is a question of fact for the jury, and not of law for the court." *Wagner v. Bealmear & Son Co.,* 135 Md. 690, 694, 109 A. 466, 467.

. When it is considered that no physical change whatever has been effected under Ordinance No. 664 from Bush Street to Stockholm Street, a distance of 1700 feet, a little less than one-third of the distance from Maryland Avenue to Stockholm Street; the passage of the closing ordinances closing a part of the last 1700 feet of the

improvement and the implications which these ordinances carry; that the improvement of Russell Street has been completed for years from Maryland Avenue to Bush Street; that nothing whatsoever has been done to affect the physical change of Russell Street north of Bush Street to Stockholm Street for twelve years before the filing of the amended bill in this case (now going on fourteen years); that no appropriation has been made therefor, we cannot say, in the light of the authorities cited, that the bill does not state a case that requires the appellant to answer. The appellant assessed the property of the appellees for benefits that would accrue to it because of the widening of Russell Street. The completion of the project would certainly have some relation to the benefits assessed. It is admitted that the City has only improved a part of Russell Street. It can hardly be contended that the failure to make an improvement in a street can benefit property located thereon or in close proximity thereto. When a project is legally authorized, but nothing is done to complete nearly one-third of it, and such inaction has continued for years, considered in connection with the fact that the City has passed two closing ordinances providing for the closing of a portion of that part of the street not improved, it would seem to be just that a court of equity should, before permitting a lien for benefits to be assessed against property under such circumstances, require the City to explain its inaction.

If the City has abandoned the project north of Bush Street and if the property of the appellees has not been benefitted by the improvement of Russell Street from Maryland Avenue to Bush Street, which are matters of fact, then the assessment for benefits made against appellees' property in this case constitutes a cloud thereon, and a court of equity has jurisdiction to entertain a bill to remove the cloud. *Homewood Realty Corp. v. Safe Deposit & Trust Co., Baltimore,* 160 Md. 457, 154 A.; *Holland v. Baltimore,* 11 Md. 186, 69 Am. Dec. 195.

It is contended that the appellees had a remedy at law in that they could have appealed from the action of the Commissioners for Opening Streets in making the assessment against their property for benefits. This assessment for benefits was made in 1930. The benefits would accrue to this lot, in the opinion of the Commissioners, by the opening of Russell Street from Maryland Avenue to Stockholm Street. It is perfectly possible that appellees were satisfied with the assessment, but they did not know at the time it was made that for over thirteen years nearly one-third of Russell Street would be in the same condition as it was at the time the assessment was made. Appellees had a perfect right to think that the City would do what it said it was going to do in Ordinance No. 664, to wit, widen Russell Street from Maryland Avenue to Stockholm Street, from its then width of sixty-six feet to one hundred feet. If they had appealed from the action of the Commissioners for Opening Streets in 1930, they could not have known that in 1944 there would be no improvement in Russell Street from Bush Street to Stockholm Street. To impute such knowledge would imply the powers of prophecy. In the circumstances here involved, we think it would be unfair and inequitable to foreclose the appellees because they did not appeal from the action of the Commissioners for Opening Streets in assessing benefits against their property in 1930.

It may well be that the City can show good reasons for its failure to complete the widening of Russell Street and that it has not in fact abandoned this project, but we do think that the facts alleged in his bill constitute a *prima facie* case of abandonment and require the City to answer it.

*Order affirmed, with costs to appellee.*